746 So.2d 205 (1999)
STATE of Louisiana, Appellee,
v.
James BLACKWELL, Appellant.
No. 32,477-KA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1999.
*208 Lavalle Salomon, Monroe, Counsel for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, George D. Ross, Asst. Dist. Atty., Counsel for Appellee.
Before NORRIS, C.J., and GASKINS and PEATROSS, JJ.
PEATROSS, J.
Defendant, James Blackwell, was convicted as charged of eight counts of carnal knowledge of a juvenile in violation of La. R.S. 14:80. Defendant was sentenced to consecutive terms of 10 years at hard labor on counts one and two. He was further sentenced to 5 years at hard labor on counts three through eight; these sentences were to run concurrently with each other and with counts one and two, resulting in an effective sentence of 20 years at hard labor. For the reasons stated herein, we vacate the conviction for count four and its sentence of 5 years at hard labor. Defendant's remaining convictions are affirmed. We find, however, that the sentences imposed in this case are excessive; and, therefore, we reverse as to sentencing and remand the case to the trial court for resentencing in accordance with this opinion.

FACTS
During the spring of 1996, the 35-year-old Defendant was a coach and teacher at West Monroe High School ("WMHS"). The victim, C.R., was a 16-year-old student and athlete who had recently moved to West Monroe from Alexandria.
C.R. played basketball, softball and eventually became involved in track. C.R. sustained a knee injury while playing basketball; *209 Defendant came to her aid. C.R. underwent surgery on her knee and was required to undergo physical therapy afterwards. Defendant assisted C.R. with her physical therapy. These therapy sessions took place at the Glenwood Wellness Center and, on occasion, at Defendant's house. During these sessions, Defendant began talking to C.R. about his marriage. He told C.R. that he and his wife were not close, did not sleep in the same room together and were going to divorce as soon as their children were old enough to understand divorce.
In March, Defendant was driving C.R. home from the wellness center and missed the turn to her house. He continued driving to another neighborhood and stopped at a stop sign. While they were stopped, Defendant told C.R. how much he was beginning to care about her and kissed her.
Thereafter, Defendant continued C.R.'s physical therapy sessions. She also saw him every day after school at track practice. They were alone together on almost a daily basis. C.R. would even leave class to visit Defendant, and he would write excuses to her teachers for her.
One night around March 26, after Defendant and C.R. finished her therapy at the wellness center, he told her that he had forgotten something back at the high school track office. C.R. accompanied him to the school's stadium where the track office was located. C.R. testified in detail regarding this encounter:
[w]e went in, he told me to sit down while he worked on something and so I sat down and we got ready to leave and he turned off the light to leave and I just waited right outside the door while he turned the light on and he had forgotten something so he went back in but the light never came back on and he just told me to come in and he began to kiss me and ... put his hands on my waist and just ... and kissed me.... Then he kissed me and then he began to take my shorts off and I was really worried and I was kind of scared and nervous and I didn'tI pulled my shorts back up and he would tell me that everything was going to be okay and he pulled my shorts down again and then he laid me on the floor and he kept telling me everything was going to be okay and I was really scared and nervous. And we hadwe had sex that night.
After the encounter on March 26, Defendant and C.R. continued seeing each other. On April 5, Good Friday, Defendant took C.R. and two other female students to Shreveport to attend a track meet. The meet was canceled due to rain. The group ate at a casino, and Defendant attempted to persuade the girls to try to get on the boat. When one of the girls refused, the group instead went to the mall for a couple of hours. When the group returned to West Monroe, Defendant dropped off the other two girls. Defendant then took C.R. to a hotel where, according to her testimony, they "had sex." Defendant told C.R. that he loved her and that he was going to divorce his wife.
C.R. testified that, around April 8, she and Defendant "had sex" at Defendant's house. She further testified that Defendant picked her up to take her to a track meet in Lake Charles, and they stopped by his house to "have sex." On or about April 24, the two stayed overnight in a motel in Natchitoches. C.R. also testified that on or about May 15, they "had sex" in or near some storage buildings.
On approximately May 17, Defendant and C.R. met at some apartments off Good Hope Road and left together in C.R.'s car. According to C.R.'s testimony, she and Defendant went to a nearby field and "had sex." Defendant had parked his truck in such a way that it blocked the tenants' vehicles. The apartment manager saw an invoice slip in the truck labeled James Blackwell Contractors and looked up his telephone number. The manager called the number and reached a woman. The womanDefendant's wifearrived at the *210 apartment complex, spoke to the manager and then parked on the street where she waited for an hour and a half to two hours. When Defendant and C.R. returned, the apartment manager saw them "hugging and kissing." Defendant's wife confronted the couple, banging on the car window.
On May 21, 1996, Defendant's wife filed for divorce, citing his "improper relationship" with C.R. as the sole reason for their separation. Attached to the divorce petition were letters purportedly written by C.R. to Defendant which discussed their romantic involvement and her love for him.
C.R. testified that on May 24, she and Defendant "had sex" at the Red Roof Inn. She further testified that about May 31, the two "had sex" at the Best Western Motel.
After the spring semester, Defendant was asked to resign from his position as teacher and coach at WMHS; he complied. In July 1996, C.R.'s parents, who had learned of the sexual relationship between Defendant and their daughter, notified law enforcement authorities. Defendant was initially charged with one count of carnal knowledge of a juvenile and one count of sexual battery. He was subsequently indicted on eight counts of carnal knowledge of a juvenile. He was convicted on all counts by a unanimous jury.[1] Defendant appeals, urging 13 assignments of error, 9 of which concern his sentences. The remaining 4 assignments of error attack the sufficiency of evidence.

SUFFICIENCY OF APPEAL EVIDENCE
In four of Defendant's assignments of error, he contends that the State failed to prove beyond a reasonable doubt that he and C.R. engaged in sexual intercourse. He attacks the credibility of C.R. and her vocabulary in describing what acts transpired between them. He also contends that the testimony of Katy Davis that she saw Defendant kissing C.R. was inadmissible. Additionally, he asserts that several matters to which Christy Cook testified, including her testimony that Defendant tried to persuade her to take the possibly pregnant C.R. to see an out-of-town doctor he knew, should have been excluded on the basis of relevance.
In State v. Hearold, 603 So.2d 731 (La. 1992), the Louisiana Supreme Court stated that, when issues of both sufficiency of the evidence and trial errors are raised on appeal, the reviewing court should first determine the sufficiency of the evidence.

Credibility
When the sufficiency of evidence is raised on appeal, the critical inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The proper procedural vehicle to raise a sufficiency of the evidence error is a motion for post verdict judgment of acquittal. La.C.Cr.P. art 821. Defendant failed to present the sufficiency argument to the trial court. He did, however, assign and brief the issue on appeal; and, therefore, we will consider it. State v. Martin, 26,501 (La.App.2d Cir.12/7/94), 647 So.2d 437.
Defendant attacks the credibility of the State's witnesses, especially C.R. In particular, he attempts to characterize her as an obsessed stalker who followed him and telephoned him constantly. Defendant testified at trial that he never had sex with C.R. or even kissed her.
*211 This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10; State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir. 1986), writ denied, 499 So.2d 83 (1987).
In the present case, the evidence against Defendant consisted primarily of C.R.'s testimony. However, there were a number of other witnesses who provided corroborating testimony to the sexual and/or intimate nature of the relationship that existed between Defendant and C.R. Additionally, there were several motel receipts in Defendant's name and signed by him that were admitted into evidence; they corresponded with the dates on which C.R. testified that she and Defendant "had sex." Defendant stipulated that his date of birth is May 6, 1960. C.R. testified that her date of birth is June 27, 1979.
It was within the province of the jury to evaluate the credibility of the witnesses. The jury chose to believe the State's witnesses instead of the self-serving testimony of Defendant and the testimony of his former wife, which was strongly challenged by the State on cross-examination. We will not second-guess the credibility determinations made by the jury.

Evidence of intercourse
La. R.S. 14:80 provides in pertinent part:
A. Carnal knowledge of a juvenile is committed when:
(1) A person over the age of seventeen has sexual intercourse, with consent, with any person of the age of twelve years or more, but under the age of seventeen years, when there is an age difference of greater than two years between the two persons and the victim is not the spouse of the offender; or
(2) A person over the age of seventeen has anal or oral sexual intercourse, with consent, with a person of the age of twelve years or more, but under the age of seventeen years, when there is an age difference of greater than two years between the two persons.
B. Lack of knowledge of the juvenile's age shall not be a defense. Emission is not necessary; and penetration, however slight, is sufficient to complete the crime. [Emphasis added.]
Defendant contends that the State did not present sufficient evidence of sexual intercourse as required by the statute. We disagree. Throughout the trial, C.R.then a 19-year-old married womanused the expression "had sex" to describe what transpired between her and Defendant on the dates set forth in the indictment. She did not specifically state that Defendant penetrated her, nor did she use the expression "sexual intercourse." While it would have been preferable for the State to have elicited more detailed information from C.R., we do not find that this is a fatal defect.
The testimony of the victim is sufficient to establish the element of sexual intercourse; however, whether through the testimony of the victim or from some other source, the record must contain evidence from which a rational jury could make the finding that penetration had occurred. See State v. Trackling, 609 So.2d 206 (La.1992) (finding that where the record was devoid of such evidence, the conviction could not be upheld). Our review of the record reveals sufficient corroborating evidence from which a rational trier of fact could have found, beyond a reasonable doubt, that sexual intercourse, as defined in La. R.S. 14:80, did occur between Defendant and C.R.
*212 C.R. testified in detail regarding her encounter with Defendant in the track office on March 26, count one. In concluding her testimony about that encounter, she stated "[a]nd we had sex that night." With the exception of April 24, C.R. used the same phrase that she had used to describe the first encounter on March 26, "had sex," to describe each of the subsequent encounters with Defendant. Additionally, C.R. and two other witnesses (Christy Cook and Tonya Miller) testified that C.R. feared that she was pregnant as a result of her sexual activities with Defendant. Christy Cook testified that, during the spring semester, C.R. feared that she had become pregnant as a result of her relationship with Defendant, a statement which C.R. corroborated in her own testimony. In order to fear pregnancy, C.R. must have understood what "had sex" meant, the phrase she used from the inception of her relationship with Defendant. It is logical that a jury could find that, because C.R. feared pregnancy at some point during the spring semester, C.R. knew what "had sex" meant on March 26, April 5 and 8 and May 15, 17, 24 and 31; and, accordingly, she chose that phrase during the trial to describe the sexual encounters between herself and Defendant. Additionally, we note that the ordinary use of the phrase "had sex" means to engage in sexual intercourse, the activity criminalized under the carnal knowledge of a juvenile statute. (The statute clearly covers vaginal, oral and anal sexual intercourse.) Viewing the testimony in its entirety, as does a jury, it is clear that a rational jury could find that penetration had occurred on each of the occasions for which Defendant was charged.
In support of his argument, Defendant relies on State v. Marigny, 532 So.2d 420 (La.App. 1st Cir.1988). In Marigny, the first circuit found that the 15-year-old victim's testimony that she and the 19-year-old defendant "had sex" was not sufficient to support a conviction of carnal knowledge of a juvenile because there was no evidence that the victim understood the phrase "had sex" to mean sexual intercourse. Instead, the court entered a conviction for the lesser included offense of attempted carnal knowledge of a juvenile. We find that the Marigny case is distinguishable; the circumstances of that case and the conflict between the testimony of the defendant and the victim raised a serious question as to the young, never-married victim's understanding of sexual matters. Furthermore, in Marigny, there was a complete lack of corroborating evidence on the issue of sexual intercourse.
In the instant case, we are presented with a different factual scenario. While the age and marital status of the victim in Marigny, in connection with the facts of that case, led to an issue of whether she understood the meaning of the expression "had sex," we find it difficult to sustain a similar argument in the instant case. In this case, by the time C.R. testified at Defendant's trial in September 1998, she was 19 years old and married. There was testimony that she feared pregnancy as the result of having "had sex" with Defendant. The only reasonable conclusion that may be drawn from this evidence is that she and Defendant engaged in sexual intercourse, the conduct prohibited by La. R.S. 14:80.

Count Four
Nonetheless, we find it necessary to vacate Defendant's conviction on count four. This count, in the amended superseding bill of indictment, alleged carnal knowledge of a juvenile on or about April 24. In its brief, the State asserted that count four involved an overnight hotel stay in Natchitoches, Louisiana, which was proven by a Natchitoches hotel receipt. The instant prosecution is in Ouachita Parish; Natchitoches is located in Natchitoches Parish. The trial court, therefore, lacked jurisdiction to prosecute Defendant for this offense. La.C.Cr.P. art. 611.[2] *213 Consequently, we are compelled to vacate that conviction and Defendant's sentence of five years at hard labor for that offense.

Christy Cook's testimony
Defendant argues that several portions of the testimony of Christy Cook, another WMHS student, were irrelevant.
La. C.E. art. 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
La. C.E. art 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
The trial court's determination regarding the relevancy of evidence is entitled to great weight and should not be overturned absent a clear abuse of discretion. State v. Burrell, 561 So.2d 692 (La. 1990), cert. denied, 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 861 (1991).
Christy testified that Defendant asked her to get a pregnancy test kit for C.R., who believed she might be pregnant. Christy refused. Defendant then tried to persuade Christy to take C.R. to see a Ruston doctor whom Defendant knew "very well." Defendant stated that the doctor would "take care of everything." Again, Christy refused. Christy also testified that Defendant spoke to her about his relationship with C.R. In particular, he told her that he planned to divorce his wife and that he and C.R. would then "officially be together." Contrary to Defendant's argument on appeal, this evidence was clearly relevant as tending to prove the sexual relationship between Defendant and C.R. The trial court did not err in admitting this testimony.
Defendant also complains of Christy's testimony that she and another girl went to Shreveport with Defendant and C.R. to attend a track meet. After the track meet was rained out, Defendant took the girls to lunch at a casino restaurant and then urged them to try to gain entrance into the casino despite the fact that they were underage. Christy testified that she refused and they went to a mall instead, before returning to West Monroe. Although Defendant argues that this testimony was irrelevant, we find that this evidence was relevant in that it corroborated part of C.R.'s account of that day. C.R. testified that after Defendant dropped off the other girls, he took her to a motel where they "had sex."
Finally, Defendant contends that Christy's testimony about seeing Defendant and C.R. standing close together in the track office was irrelevant. Defendant made no relevancy objection to this portion of her testimony. A new basis for an objection cannot be raised for the first time on appeal. State v. Cressy, 440 So.2d 141 (La.1983); State v. O'Neal, 501 So.2d 920, 924 (La.App. 2d Cir.1987), writ denied, 505 So.2d 1139 (1987); La. C.Cr.P. art. 841. Thus, we are not permitted to address this argument.

Katy Davis' testimony
Defendant argues that the testimony of student Katy Davis that she saw Defendant kissing C.R. in the school track office was irrelevant. He also asserts that its use required Prieur notice.
The Prieur notice rule requires the State to furnish, as a prerequisite to the admissibility of evidence of other *214 crimes, in writing to Defendant, a statement of the acts or offenses it intends to offer, describing the same with the general particularity of an indictment or information. State v. Dixon, 628 So.2d 1295 (La.App. 3d Cir.1993). The purpose of a Prieur notice is to give a defendant an opportunity to test the relevancy, admissibility and probativeness of other crimes evidence prior to its introduction at trial, since evidence of previous criminal activity does affect the opinion of those who sit in judgment. State v. Dixon, supra. We note that the evidence of consensual kissing alone does not constitute a crime. See State v. Louviere, 602 So.2d 1042 (La.App. 4th Cir.1992); State v. Ragas, 607 So.2d 967 (La.App. 4th Cir.1992), writ denied, 612 So.2d 97 (La.1993). Also, evidence of an additional sexual act between Defendant and C.R. that occurred within the time frame of the charged crimes does not require Prieur notice. State v. Dixon, supra. Consequently, we find that Katy's testimony that she saw Defendant kissing C.R. during the time period of their continuing sexual relationship did not require Prieur notice.
As to the relevancy of this testimony, the fact that Defendant was seen kissing C.R. at the school is highly relevant. The State had the burden to establish that there had been sexual intercourse between the two individuals. The fact that they were kissing in the high school track office tends to prove that the two had some type of intimate, sexual relationship. The trial court did not err in allowing this testimony.

EXCESSIVE SENTENCES
In nine of his assignments of error, Defendant complains that his sentences are excessive. We agree.
In reviewing claims of excessiveness, an appellate court uses a two-pronged analysis. First, the record must show that the trial court took cognizance of the factors set forth in La.C.Cr.P. art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.), writ denied, 439 So.2d 1074 (1983); State v. Tully, 430 So.2d 124 (La.App.2d Cir.), writ denied, 435 So.2d 438 (La.1983). The objective of article 894.1 is the articulation of a factual basis for sentence rather than rote recitation of the guidelines. After determining compliance with La.C.Cr.P. art. 894.1, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, supra; State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983).
A sentence is unconstitutionally excessive in violation of La. Const. art. 1, § 20, if it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La.App. 2nd Cir. 1983). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Thompson, 25,583 (La.App.2d Cir.1/19/94), 631 So.2d 555; State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.), writ denied, 435 So.2d 433 (La.1983).
Defendant was sentenced to 10 years for counts one and two, to run consecutively, and 5 years for counts three eight, to run concurrent with counts one and two. In sum, Defendant was sentenced to 20 years at hard labor without benefit of good time. See La. R.S. 15:571.3C(4)(a). The trial judge reviewed *215 the facts of this case. He stated that Defendant was very educated, came from a good family, had no juvenile record and absolutely no criminal record. The trial judge did point out that Defendant had denied, and was still denying, that he had sexual intercourse or was involved in any improper sexual conduct with C.R. The trial judge also considered the fact that the incident involved a 16-year-old girl[3]; and, though she was not physically harmed, due to humiliation and shame, she had to leave public school and finish her senior year by home schooling. He further observed that the situation nearly destroyed her relationship with her parents and that her family had to move back to Alexandria due to the publicity.
The trial judge did consider the fact that C.R. consented to their relationship, but stated that there could never be any grounds which would justify a high school teacher to have a sexual relationship with a student, even if she was obsessed. The record shows that not only did C.R. consent to the relationship, but that she made deliberate efforts to foster and continue it; testimony and documentary evidence show that C.R. literally barraged Defendant with telephone calls.
The trial judge noted that Defendant is also accused of committing sexual battery upon two other WMHS students. He further stated that Defendant had committed perjury in both the criminal proceeding and his divorce proceeding. Also, in considering whether Defendant's conduct was likely to recur, the trial judge pointed out that, while waiting for trial, Defendant secured another teaching position in Texas where he was starting to gravitate toward and gain the trust of another female student, while at the time making her uncomfortable by initiating minor physical contact. The trial judge did note that the girl was 17; and, as such, if anything had occurred with her in Louisiana, no charges would result.
The trial judge also stated that the incarceration would not only be a hardship on Defendant, but also create a hardship on his children, whom he was financially supporting. He further noted that he got a large number of letters praising Defendant's ability as a teacher, an individual, a Christian man and someone concerned with the welfare and well being of young people.[4] The trial judge then found an undue risk that, during any period of suspended sentence or probation, Defendant would commit another crime. He found that Defendant was in need of a correctional treatment or custodial environment that would be provided most effectively by commitment to an institution. The trial judge then sentenced Defendant to 10 years for counts one and two, to run consecutively, and 5 years for the remaining counts to run concurrent with counts one and two.
While we strongly agree with the trial judge that Defendant is in need of correctional treatment or a custodial environment which is best provided by commitment, we find that 20 years at hard labor is excessive and shocks the sense of justice. This is largely because of the disparity between the present sentence and the sentences of similarly situated defendants who were convicted of carnal knowledge of a juvenile, some of whose conduct, sadly, is more egregious than Defendant's. See State v. Willis, 420 So.2d 962 (La.1982) (26 years for three counts of carnal knowledge *216 of a juvenile and one count of indecent behavior with a juvenile where defendant impregnated and married his girlfriend's oldest daughter, lived with this 15-year-old bride, her mother and two younger sisters, having sex with all four of them); State v. Smith, 404 So.2d 210 (La.1981) (4 years; defendant impregnated 12-year-old); State v. Compton, 367 So.2d 844 (La. 1979) (concurrent 3 years for each of four counts of carnal knowledge involving four different girls); State v. Blackwell, 377 So.2d 110 (La.1979) (10 years for carnal knowledge of a juvenile, convicted as third-felony offender); State v. Barber, 315 So.2d 296 (La.1975) (2 years; victim was a 15-year-old runaway); State v. Berry, 31,861 (La.App.2d Cir.3/31/99), 732 So.2d 638 (10 years for carnal knowledge of a juvenile pled down from two counts of forcible rape where there was evidence that victim struggled and scratched defendant); State v. DeGueurce, 30,334 (La.App.2d Cir.2/25/98), 710 So.2d 296, writ denied, 98-1213 (La.10/9/98), 726 So.2d 18 (3 years; defendant was a female teacher who had sexual intercourse with one of her 14-year-old students over a one-year period); State v. Armstrong, 26,031 (La.App.2d Cir.5/4/94), 637 So.2d 629 (10 years for carnal knowledge of a juvenile pursuant to plea agreement that State would not file habitual offender bill; victim was step-daughter); State v. Tolliver, 621 So.2d 17 (La.App. 2d Cir.1993) (6 years; victim was live-in girlfriend's 16-year-old daughter; incident occurred over a five-year period); State v. Young, 535 So.2d 1150 (La.App. 2d Cir. 1988) (10 years for carnal knowledge of a juvenile, victim was step-daughter, with incest charge of daughter being dropped, vacated because plea was not free and voluntary); State v. Daniels, 457 So.2d 114 (La.App. 2d Cir.1984), writ denied, 462 So.2d 193 (La.1984) (4½ years; victim was girlfriend's 16-year-old sister); State v. Sanderson, 97-1281 (La.App. 3d Cir.5/13/98), 715 So.2d 483 (3 years; defendant impregnated a 16-year-old); State v. Guffey, 94-797 (La.App. 3d Cir.2/1/95), 649 So.2d 1169, writ denied, 95-0973 (La.9/22/95), 660 So.2d 469 (14 years; victim was 15-year-old step-daughter where incidents occurred over three years); State v. Miller, 95-77 (La.App. 3d Cir.8/30/95), 663 So.2d 107 (5-year suspended sentence); State v. Breaux, 491 So.2d 506 (La.App. 3d Cir.1986) (3 years; defendant was a policeman who had sexual intercourse with a 15-year-old over a two-month period, with indications that force was used); State v. Cary, 535 So.2d 417 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1244 (La.1989) (7 years for carnal knowledge of a juvenile pled down from two counts of aggravated crime against nature and two counts of molestation; victim was step-daughter); State v. Ezernack, 496 So.2d 1317 (La.App. 3d Cir.1986) (7 years for carnal knowledge of a juvenile pled down from aggravated rape; victim was step-daughter); State v. Freeman, 447 So.2d 600 (La.App. 3d Cir.1984) (3 years; victim was girlfriend's 12-year-old daughter); State v. Duhon, 431 So.2d 120 (La. App. 3d Cir.1983) (4 years; defendant impregnated 14-year-old step-daughter); State v. Owunta, 98-0006 (La.App. 4th Cir.3/31/99), 734 So.2d 57 (5-year suspended sentence; defendant was a teacher who had sexual intercourse with student over a three-month period); State v. Lewis, 97-1549 (La.App. 4th Cir.2/3/99), 727 So.2d 1274 (10 years; defendant was a family friend; sexual relationship occurred over a two-month period; habitual offender sentence of 20 years vacated due to procedural problems, specifically held 10 years not excessive); State v. Vining, 609 So.2d 984 (La.App. 4th Cir.1992), writ denied, 613 So.2d 991 (1993) (5 years); State v. Dixon, 471 So.2d 282 (La.App. 4th Cir.1985) (10 years; victim was girlfriend's daughter); State v. Boudreaux, 565 So.2d 1069 (La. App. 5th Cir.1990) (10 years for carnal knowledge, pursuant to plea agreement where aggravated crime against nature and molestation charges dropped).[5] Although *217 the trial judge did state that, as a public school teacher, Defendant was in a position of "the highest trust that the community can bestow upon any individual," we believe that a policeman, parents and step-parents have a similar high trust in the community, and these individuals have not been treated as harshly. For these reasons, the case is remanded for resentencing. We further find that, under the circumstances germane to these seven counts of carnal knowledge of a juvenile, and since Defendant was convicted of two or more offenses constituting a common scheme of activity, a total of 12 years at hard labor without benefit of good time is the highest affirmable sentence. La. R.S. 15:571.3 C(4)(a); La.C.Cr. P. art. 883.

CONCLUSION
For the reasons stated herein, Defendant's conviction and sentence for count four are vacated. Defendant's remaining convictions for counts one through three and five through eight are affirmed; however, Defendant's sentences on those counts are reversed and the case is remanded to the trial court for resentencing in accordance with this opinion.
CONVICTION AND SENTENCE FOR COUNT FOUR VACATED; REMAINING CONVICTIONS AFFIRMED; SENTENCING REVERSED AND CASE REMANDED FOR RESENTENCING IN ACCORDANCE WITH THIS OPINION.
GASKINS, J., concurs in part and dissents in part..
NORRIS, C.J., dissents in part and concurs in part with written reasons.
NORRIS, C.J., dissents in part and concurs in part.
I respectfully dissent in part. It is axiomatic that in order to convict, the prosecution must prove every element of a criminal offense beyond a reasonable doubt. La.C.Cr.P. art. 804; State v. Harris, 97-0778 (La.3/4/98), 708 So.2d 387; Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 2080-2081, 124 L.Ed.2d 182 (1993). Additionally, the United States Constitution guarantees the right to a jury determination of every element of every crime charged. United States v. Gaudin, 515 U.S. 506, 509, 115 S.Ct. 2310, 2312, 132 L.Ed.2d 444 (1995).
Due process requires that the language of a criminal statute have a generally accepted meaning sufficient to give adequate warning of the proscribed conduct as well as to provide standards to enable courts to fairly administer the law. State v. Prestridge, 399 So.2d 564, 572 (La.1981); Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952). As such, it is well established that criminal statutes are to be strictly construed. Any doubt as to the extent of the coverage of a criminal statute must be decided in favor of the accused and against the State. State ex rel. Mims v. Butler, 601 So.2d 649 (La.1992); State v. Badie, 626 So.2d 46 (La.App. 1st Cir.1993); State v. Smith, 97-0782, p. 4 (La.App. 1st Cir.2/20/98); 708 So.2d 1166, 1168.
The elements of the offense of carnal knowledge of a juvenile who is not the spouse of the defendant are: (1) consensual sexual intercourse, (2) between a person over the age of 17, (3) and a person of age 12 years or more, but under the age of 17 years, (4) when there is an age difference of greater than two years between the two persons. La. R.S. 14:80; State v. Marigny, *218 532 So.2d 420 (La.App. 1st Cir.1988). The statute does not provide an explicit definition of the term "sexual intercourse," an essential element of the crime, but it nevertheless requires "penetration, however slight" to complete the crime. This apparently contemplates vaginal, oral or anal penetration. R.S. 14:80 B; Id.
In this regard, R.S. 14:41, the criminal rape statute, similarly requires evidence of vaginal or anal "penetration" as an essential element of the crime. In interpreting that statute, courts have required that for a trier of fact to find the essential element of penetration, beyond a reasonable doubt, the record must reveal some evidence of penetration, however slight. State v. Prestridge, supra; State v. Hubbard, 97-916 (La.App. 5th Cir. 1/27/98), 708 So.2d 1099, 1104, writ denied 98-0643 (La.8/28/98), 723 So.2d 415. Although the testimony of the victim is adequate to establish this element, if the record is bereft of any evidence from which a rational jury could make a specific finding that penetration had indeed occurred, then the conviction cannot be upheld. State v. Trackling, 609 So.2d 206, 208 (La.1992)(requiring evidence that penetration was intended for crime of attempted rape where victim testified only to an aborted agreement to "have sex" and defendant admitted desire only to have oral sex); State v. Marigny, supra (that victim testified to "having sex" was insufficient for conviction under R.S. 14:80 when it was never established what she meant by that phrase and in absence of physical evidence or other evidence of penetration).
Blackwell was charged with eight counts of carnal knowledge of a juvenile, C.R. I agree with the majority's decision to vacate the conviction of Count 4, because it pertained to an incident in Natchitoches, which is outside the District Court's (as well as this Court's) jurisdiction.[1] The other occasions in which Blackwell is accused of having consensual sex with C.R. are: Count 1 on March 26, Count 2 on April 4, Count 3 on April 8, Count 5 on May 15, Count 6 on May 17, Count 7 on May 24, and Count 8 on May 31. The record clearly shows that on these dates Blackwell was over the age of 17, C.R. was 16 years old, Blackwell and C.R. were not married, and there was greater than two years' difference between their ages. The only real contention is whether or not there was consensual sexual intercourse between Blackwell and C.R. on these seven occasions, and if so, whether the state met its burden of proving that fact.
In order to prove that Blackwell had consensual sexual intercourse with C.R. on April 5, May 15, May 24, and May 31, the state asked C.R. if she and Blackwell "had sex," to which she replied, "Yes, sir." C.R. further testified that she and Blackwell "had sex" on April 8 and May 17, but did not describe the specific "sexual" conduct, only the location where they "had sex." C.R., however, did not provide sufficient details from which one could infer, beyond a reasonable doubt, that "sexual intercourse" took place during each of these encounters. The only incident which C.R. explained in any type of detail was the first incident on March 26, when she testified that, while at the West Monroe Stadium track office:
[w]e went in, he told me to sit down while he worked on something and so I sat down and we got ready to leave and he turned off the light to leave and I just waited right outside the door while he turned the light on and he had forgotten something so he went back in but the light never came back on and he just told me to come in and he began to kiss me and ... put his hands on my waist and just ... and kissed me.... Then *219 he kissed me and then he began to take my shorts off and I was really worried and I was kind of scared and nervous and I didn'tI pulled my shorts back up and he would tell me that everything was going to be okay and he pulled my shorts down again and then he laid me on the floor and he kept telling me everything was going to be okay and I was really scared and nervous. And we hadwe had sex that night.
Noticeably, at no time did the state attempt to elicit from C.R. what the phrase "had sex" meant to her or ask her to describe the "sex" which occurred. The closest the state even got to demonstrating that C.R. and Blackwell were engaged in the statutorily proscribed activity ("sexual intercourse") was by C.R.'s admission that during the incident charged in Count 1 Blackwell pulled her shorts down and they "had sex."
To bolster the state's case, C.C. testified that at one point during the spring semester C.R. feared she was pregnant, which was corroborated by C.R. on direct examination. C.C. further testified that Blackwell likewise expressed concerns that C.R. was pregnant and told C.C. that she should take C.R. to a doctor in Ruston who would "take care of everything." C.C. refused to do this, testifying that she also denied Blackwell's request to get C.R. a pregnancy test, telling him that it was his responsibility and not hers. Additionally, C.C. testified that C.R. was not dating anyone. This circumstantial testimony, coupled with C.R.'s testimony that she was disrobed on March 26 and her fear of pregnancy, could lead a rational trier of fact to find that sexual intercourse took place on at least one occasion, the incident charged in Count 1. As such, viewing the evidence in a light most favorable to the prosecution, Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (1992), I conclude that the state did prove beyond a reasonable doubt that when C.R. testified that she "had sex," that this must have included sexual intercourse on at least one occasion as required by R.S. 14:80. Therefore, Blackwell's conviction as to Count 1 must stand.
As for the remaining counts, the state failed to carry its burden of proving the requisite "sexual intercourse" element. The statutory language is clear, and leaves no doubt as to what is required to convict. Nevertheless, all the state could elicit from testimony was circumstantial evidence of an improper relationship and C.R.'s vague admission that the two "had sex." This does not establish what type of sexual conduct occurred, or if it included any penetration, as is statutorily required. I disagree with the majority's inference that because C.R. was a 19-year-old married woman when she testified, her use of "have sex" was interchangeable with "sexual intercourse" to the exclusion of any other activity which may be considered "sexual" in nature.[2] Notwithstanding C.R.'s age and experience, this reasoning still requires an impermissible inferential leap outside the evidence presented to the jury,[3] particularly since no details of what *220 type of sexual activity actually occurred were presented as to Counts 2-8. Since the state failed to establish sufficient evidence of penetration, an essential element of the crime, I would vacate the convictions on counts 2-8, affirming only Count 1 of the conviction.
Although I disagree in part with the majority's reasoning as to sufficiency, I do agree that this 20 year sentence for seven counts of carnal knowledge of a juvenile is excessive and consequently concur with Judge Peatross and would remand for resentencing for the reasons expressed by him.
GASKINS, J., concurring in part and dissenting in part.
I concur in that part of the opinion that upholds the conviction of counts one through three, and five through eight, and vacates the conviction and sentence of count four. I respectfully dissent from the reversal of the sentence imposed by the trial court.
NOTES
[1] The case was previously before this court for review of the trial court's ruling on the State's Prieur motions to admit other crimes evidence. See State v. Blackwell, 30,281 (La. App.2d Cir.11/10/97), 701 So.2d 1389, writ denied, 97-3073 (La.2/13/98), 709 So.2d 755. There we affirmed the trial court's refusal to admit evidence of Defendant's "lustful disposition" toward three other adolescent girls.
[2] We note that there is testimony of another sexual encounter at Defendant's home on a Wednesday before a Lake Charles track meet; however, no date is given for this incident. In view of the State's specific admission in brief that count four pertained to the Natchitoches trip and the lack of a date establishing that it occurred on or about April 24, we conclude that this "extra" act of sexual intercourse was not intended to be count four.
[3] The dates which correspond with the eight counts are: count one on March 26, count two on April 4, count three on April 8, count five on May 15, count six on May 17, count seven on May 24 and count eight on May 31. The record clearly shows that on these dates Defendant was over the age of 17, C.R. was 16 years old, Defendant and C.R. were not married and there was greater than two years difference between their ages. We note, however, that C.R.'s birthday is June 27, 1979. She was approximately 90 days shy of her 17th birthday at the time the relationship ensued.
[4] These letters have not been included in the appellate record.
[5] Additionally, we note that other states have failed to impose such draconian sentences in analogous factual scenarios, even in the more notorious cases which have gained national attention. Notably, the state of Washington sentenced Mary K. Letourneau to a term of seven and one half years for an ongoing sexual relationship with her fifth grade student which resulted in the birth of two children. See, http://www.courttv.com/trials/letourneau/index.html. Likewise, Joey Buttafuoco only served six months for his involvement with the infamous Amy Fisher. See, http://www.courttv.com/people/1999/0506/amyfisher_ap.html.
[1] In addition, in regard to this count, C.R. only testified that she and Blackwell stayed overnight in Natchitoches. She did not testify as to what they did while there; she did not even testify that they "had sex." As such, even if this count pertained to an incident which had occurred in this jurisdiction, evidence of sexual intercourse, or sexual activity of any type, is sorely lacking.
[2] Because of the sensitive and sometimes embarrassing subject matter, "sexual intercourse," "sex," and "sexual relations" are somewhat elusive terms which could be easily misconstrued, as evinced by last year's Presidential Impeachment trial. Moreover, the scope of sexual activities encompassed by "had sex" and "sexual intercourse" can be inferred broadly or narrowly depending on context and agenda. Several states have struggled to delineate the scope of these phrases in a criminal prosecution context. See, e.g., Iowa v. ToNeCa, Inc., 265 N.W.2d 909 (Iowa, 1978); Iowa v. Foster, 356 N.W.2d 548 (Iowa, 1984); Michigan v. Anger, 449 Mich. 341, 535 N.W.2d 173 (1995).
[3] In this regard, I find the majority's failure to follow Marigny, a factually analogous case from the First Circuit, disingenuous at best. In Marigny, a victim, who was 15 years old at the time of the alleged crime, testified that she "had sex" with the defendant, and the state never followed up by establishing what she meant by that phrase. In the absence of physical or other corroborative evidence that penetration had occurred, the court held that legally, there was insufficient evidence to convict the defendant of carnal knowledge of a juvenile. State v. Marigny, supra, at 421. A close reading of the opinion reveals that the Marigny court did not, as the majority presupposes, focus on the victim's age and experience and whether she "really knew" what "having sex" meant, but on the deficiencies in the state's case. Id. Particularly noteworthy is that the victim in that case testified to a greater degree of specificity than did C.R. in this case but the court nevertheless found her admission that the two "had sex," without evidence or testimony establishing penetration, as inadequate. As such, I find Marigny squarely on point and see no reason not to follow its reasoned example. Likewise, the Louisiana Supreme Court, in State v. Trackling, supra, was similarly faced with a victim's vague testimony in the context of an aggravated rape charge. In that case, the defendant was charged with attempted aggravated rape arising from an aborted drugs-for-sex exchange, an offense which requires a specific intent to engage in an act of anal or vaginal sexual intercourse without the victim's consent. Id. at 207. At trial, the adult victim testified as to her original intent to "have sex," although the defendant maintained that he merely desired oral sex. Since the state never elicited a clarification from the victim what she meant by the phrase "have sex," the court concluded that the state failed in its burden of proving the defendant's specific intent to perpetuate an act of anal or vaginal intercourse. Id. at 208.