MADELEINE M. LANDRIEU, Judge.
| .PROCEDURAL HISTORY
Walter Jackson was charged by bill of information with three counts of felony carnal knowledge of a juvenile in violation of La. R.S. 14:80. He pled not guilty on November 16, 2009. The case proceeded *1021 to trial by jury on March 10, 2011. Mr. Jackson was found guilty as charged on two of the three counts and was acquitted on the third. Mr. Jackson filed the instant appeal of his convictions.
FACTS
The juvenile victim, S.P., was a student at Douglas Senior High School (“Douglas”). Mr. Jackson worked at Douglas as a security guard and also provided security detail for the high school’s sporting events. Testimony at trial established that S.P. had been having difficulty at school, such as being teased for not having clean uniforms and skipping school. In response to these difficulties, S.P.’s mother had asked Mr. Jackson and a female security guard to watch over her.
The criminal investigation into activities between Mr. Jackson and S.P. began when S.P.’s mother called 911 to report inappropriate behavior by Mr. | Jackson with S.P., her minor daughter.[1] S.P.’s mother testified that she became suspicious of Mr. Jackson because he refused to take S.P.’s brothers with him when he took S.P. on outings, and because she discovered a credit union statement reflecting that Mr. Jackson had started a college fund for S.P. When she questioned S.P. about the college fund and her concerns about Mr. Jackson, S.P. revealed to her mother that she and Mr. Jackson had been having consensual sex at hotels.
Detective Glenell Sentino of the New Orleans Police Department responded to the 911 call and was the lead investigator on the case. She testified that upon arriving at S.P.’s residence to investigate, she spoke with the mother first and learned that S.P. was having consensual sex with a security guard employed at her high school. Det. Sentino obtained from the child’s mother a credit union statement bearing S.P.’s name which was entitled “college fund” with a balance of $5,785.10. The fund appeared to be jointly owned by Mr. Jackson and his mother. Det. Sentino then spoke to S.P., who stated that she had consensual sex with Mr. Jackson numerous times at hotels. Accompanied by her mother, S.P. left the residence with Det. Sentino and directed her mother and the detective to a specific hotel, the Econo Lodge Motel on Chef Menteur Highway, where she alleged that she and Mr. Jackson had engaged in sexual intercourse. Det. Sentino subsequently obtained from this motel a receipt in Mr. Jackson’s name dated February 24, 2009.
Sometime later, Det. Sentino showed S.P. Mr. Jackson’s picture from his driver’s license. S.P. identified him as the man with whom she had engaged in |sconsensual sex. After the positive identification of Mr. Jackson and after confirming Mr. Jackson’s age, Det. Sentino obtained an arrest warrant for Mr. Jackson.[2] She also obtained a taped statement from S.P.
At trial, S.P. testified that she did not get along well with her mother and that her mother had once thrown her out of the house. She also recalled that when she was younger, she and her siblings were removed from their mother’s custody by the State.[3] S.P. testified that she initiated the sex with Mr. Jackson because she “wanted to be a grown person at a young age” and that they had sex four or five *1022 times at hotels. She further testified that her mother was always asking Mr. Jackson for money and that she once texted Mr. Jackson that her mother wanted her to get money from him. S.P.’s mother testified that she never asked Mr. Jackson for money, but acknowledged that her husband did ask him for help one time with an automobile payment.
S.P. also testified that the credit union statement which her mother found was a fake created by Mr. Jackson and was a scam to get back at her mother. Mr. Jackson denied providing S.P. with a fake statement and noted that he sometimes had documents in his vehicle when he would transport S.P. — inferring that S.P. may have taken the bank statement from his car. Mr. Jackson testified that he and his mother had a college account for his son in the Navy Federal Credit Union bearing the same account number and balance as the one presented by S.P.’s mother.
Glennis Herbert is a female teacher and coach at Douglas. Both she and Mr. Jackson testified that Mr. Jackson and his family looked after S.P. and |4bought her school uniforms. Mr. Jackson further testified that once S.P. left high school and his mother died, he ceased contact with S.P. He explained that he terminated contact because he always liked to have a female present whenever he dealt with S.P. Without his mother and Coach Herbert, this was no longer possible.
Mr. Jackson was charged with three counts of felony carnal knowledge of a juvenile, each count representing an incident of illegal sexual conduct between him and S.P. He was found guilty on counts one and three. Count one charged him with committing felony carnal of a juvenile on November 28, 2009 and count three charged him with committing felony carnal knowledge of a juvenile on May 10, 2009. The jury acquitted Mr. Jackson on count two of the bill of information which charged him with felony carnal knowledge of a juvenile on February 24, 2009.

Count One

The evidence at trial established that on November 28, 2008, during the school’s Thanksgiving holidays, Coach Herbert had called a practice for the school’s basketball team. On the way to practice, one of the Douglas female basketball players, M.N. was involved in an automobile accident.[4] Coach Herbert saw the accident and stopped to assist. Coach Herbert testified that Mr. Jackson and S.P. arrived at the scene of the accident in his truck. She further testified that M.N. had to be taken to the hospital in an ambulance. According to Coach Herbert, Mr. Jackson followed the ambulance to the hospital in his | struck, and S.P. rode with him. Coach Herbert kept in touch with Mr. Jackson for updates on M.N. and Mr. Jackson informed the coach when he left the hospital later in the evening.[5] When school resumed after the holidays, Mr. Jackson told the coach that after leaving the hospital, he had picked up beignets for S.P.’s mother, dropped off S.P., and then dropped off M.N. Coach Herbert testified that she never saw Mr. Jackson engage in any inappropriate behavior with any of the girls.
S.P. testified that she went to the hospital with her mother and left with Mr. Jackson and M.N. She denied being at the accident scene. She further testified that after leaving the hospital, she, Mr. *1023 Jackson and M.N. went to a motel on Downman Road, where Mr. Jackson had sex with both she and M.N. Mr. Jackson then dropped them off at their respective houses, dropping S.P. off first and M.N. second.
Mr. Jackson testified that as part of his duties as security for the basketball team, he went to the scene of the accident because it involved one of the players. However, he testified that he arrived at the accident by himself and that he went to the hospital by himself. Consistent with Coach Herbert’s testimony, he testified that after leaving the hospital, he stopped for beignets and then dropped S.P. and M.N. off at their respective residences. He denied ever having gone to a motel with S.P. M.N. did not testify at the trial.

Count Three

Count three of the bill of information charged Mr. Jackson with carnal knowledge of a juvenile occurring on May 10, 2009. Mr. Jackson specifically 1 fidenied going to a hotel with S.P. on this date. The only other reference at trial to this date was in the form of testimony by Det. Sen-tino. This testimony did not establish that any criminal activity occurred on May 10, 2009.
Mr. Jackson was found guilty as charged on counts one and three and not guilty on count two. On March 28, 2011, he was sentenced on each count to two years at hard labor to run concurrently, which sentence was suspended. Mr. Jackson was placed on two years of active probation, ordered to pay $190.50 in court costs, and ordered to register as a sex offender. Mr. Jackson appealed his convictions.
ASSIGNMENTS OF ERROR
Mr. Jackson alleges two assignments of error:
1. That there is insufficient evidence to sustain the convictions.
2. That due to the fact that evidence is missing from the record, Mr. Jackson cannot receive a full review of the evidence and is therefore entitled to a new trial.
ASSIGNMENT OF ERROR # 1: SUFFICIENCY OF EVIDENCE
By this assignment of error, Mr. Jackson asserts that the evidence presented at trial was insufficient to support his convictions. When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hea-rold, 603 So.2d 731, 734 (La.1992); State v. Marcantel, 2000-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55. Therefore, this assignment of error will be considered first.
The standard of review for the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the State proved the essential elements beyond a treasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817, 820 (La.1987). La. R.S. 14:80 provides in pertinent part:
A. Felony carnal knowledge of a juvenile is committed when:
(1) A person who is seventeen years of age or older has sexual intercourse, with consent, with a person who is thirteen years of age or older but less than seventeen years of age, when the victim is not the spouse of the offender and when the difference between the age of the victim and the age of the offender is four years or greater;
[[Image here]]
*1024 B. As used in this Section, “sexual intercourse” means anal, oral, or vaginal sexual intercourse.
C. Lack of knowledge of the juvenile’s age shall not be a defense. Emission is not necessary, and penetration, however slight, is sufficient to complete the crime.
[[Image here]]
Mr. Jackson does not dispute their ages or that he and S.P. were not married to each other. Instead, he urges that the evidence failed to prove beyond a reasonable doubt that he had sexual intercourse with S.P. Mr. Jackson argues that the allegations made by S.P. against him were a scam invented by her mother to get money from him. Mr. Jackson argues that SJP.’s testimony was not credible and that it was uncorroborated. He further argues that three specific dates were listed as to when the incidents occurred, yet at trial, 5.P. could not give any specific dates or provide the names of the hotels where the incidents were alleged to have occurred.[6]
The State produced a hotel receipt in appellant’s name from the Econo Lodge Motel dated February 24, 2009 that was verified by the manager of the hotel, Mr. Batell. This is the hotel S.P. directed Det. Sentino to on the night she |8was interviewed. Count two of the bill of information alleged that Mr. Jackson committed felony carnal knowledge of a juvenile on February 24, 2009. On this count, however, Mr. Jackson was acquitted.
On the remaining two counts alleging carnal knowledge of a juvenile on November 28, 2008 and on May 10, 2009, Mr. Jackson was found guilty. This court will separately address the sufficiency of the evidence on these two counts.
The State is not required to present evidence proving the date of an offense when it is not an essential element of the crime. La.C.Cr.P. art. 468; State v. Brown, 421 So.2d 854, 856 (La.1982). As to the crime of carnal knowledge of a juvenile, the date of the offense is not an essential element. State v. S.L.D., 08-549, pp. 7-8 (La.App. 3 Cir. 11/5/08), 997 So.2d 759, 765-766. Thus, the fact that S.P. was unable to give any specific dates is not critical to the charge and does not necessarily prove that the incidents did not occur.
Mr. Jackson asserts that despite S.P.’s testimony that she had sex with Mr. Jackson at the Econo Lodge Motel, the State failed to sufficiently prove that sexual intercourse occurred. He contends that S.P. testified only that she and Mr. Jackson “had sex” a few times, without any questioning by the State as to whether she understood what constituted sexual intercourse. However, the record reflects testimony from which the jury could reasonably infer that S.P. knew and understood the meaning of her testimony.
In State v. Rives, 407 So.2d 1195, 1197 (La.1981), the Louisiana Supreme Court held that the testimony of the victim is sufficient to establish the element of sexual intercourse. In the instant case, throughout her testimony, S.P. stated that she had sex with Mr. Jackson. Although she never testified to, nor was she questioned about, any specific sexual activity between Mr. Jackson and | ¡Rerself, Louisiana jurisprudence is instructive on this point. In State v. Blackwell, 32,477 (La. App. 2 Cir. 10/27/99), 746 So.2d 205, the Second Circuit held that the victim’s testimony that she had sex with the defendant *1025 without specifically stating that he penetrated her was sufficient to prove sexual intercourse. The Blackwell court noted that the victim was nineteen at the time of trial, married, and that she testified that she feared getting pregnant as a result of having sex with the defendant. Given S.P.’s age at the time of trial and her testimony that she was trying to act grown up and get back at her mother, it appears, as in Blackwell, that the jury reasonably inferred that S.P. knew the meaning of sexual intercourse.
The trier of fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witnesses. State v. Hampton, 98-0331 (La.4/23/99); 750 So.2d 867, 880. The evidence established that the car accident involving M.N. occurred over the Thanksgiving holidays. S.P. testified that after leaving the hospital, Mr. Jackson took her and M.N. to a hotel and had sex with them. Here, the jury chose to find S.P. credible despite her sometimes imprecise testimony and the absence of corroborating evidence. With regard to count one, charging Mr. Jackson with felony carnal knowledge of a juvenile on November 28, 2008, the finding of the jury is not clearly contrary to the evidence and should not be disturbed on appeal. This assignment of error is without merit as to this count.
However, with regard to count three charging Mr. Jackson with felony carnal knowledge of a juvenile on May 10, 2009, this court is troubled by the lack of evidence, testimonial or documentary, of any illegal activity taking place between Mr. Jackson and S.P. on or around this date. S.P.’s testimony did not |lninelude any reference to May 2009. We recognize that S.P. gave a taped statement to Det. Sentino, which was played for the jury, but that statement is not a part of the record before us for review.[7] Therefore, we cannot consider it. Mr. Jackson testified that he never took S.P. to a hotel and specifically testified that he did not take her to a hotel on May 10, 2009. The only other reference to May, 2009 in the transcript is contained in Det. Sentino’s testimony:
* * *
Q—All right, what about, I think, May of 2009, did she describe where she was at that time or who she was with?
A—Which date?
Q—On I think that’s May of 2009?
A—The date.
Q—May 10, 2009.
A—She said she was with him on Mother’s Day, with Walter.
Q—Is that May 10?
A—I would have to look at a calendar.
[[Image here]]
Considering the evidence before us, we find this assignment of error with regard to this count to have merit. The evidence is insufficient to support the conviction of felony carnal knowledge of a juvenile on or around May 10, 2009. Accordingly, we reverse the jury’s finding on this count.

ASSIGNMENT OF ERROR #2: REVIEW OF CONVICTION

By this assignment of error, Mr. Jackson asserts that he cannot receive a full review of his convictions because evidence from the trial is missing. He urges, therefore, that he is entitled to a new trial. *1026 On October 8, 2011, Mr. Jackson’s counsel moved to supplement the appellate record with the following exhibits: (1) S-l, the 911 tape; (2) S-3, the photograph of Mr. Jackson; (3) S-5, a bank statement; (4) S.P.’s taped statement; (5) D-l, a bank statement; (6) D-4, a Navy Federal Credit Union statement; and In(7) D-5, a highlighted bank statement. This Court granted the order. In response, on October 17, 2011, the clerk’s office of the district court certified that it was not in possession of any evidence in the referenced case.
Mr. Jackson alleges that the review of S.P.’s taped statement and the credit union statements are critical to his appeal. Notably, however, most of this evidence is included in the record. S-5, D-l, D-4, and D-5, the various credit union statements introduced at trial, are part of the record on appeal. The only pieces of evidence unavailable for our review are S.P.’s taped statement and the recording of the 911 call. Mr. Jackson urges that the taped statement made by S.P. and played for the jury may contain inconsistencies; it may or may not sufficiently prove that sexual intercourse occurred; and/or it may provide additional details as to when the alleged incidents occurred.[8] Despite what the taped statement may or may not include, this court would not be able to consider its contents because, according to the record, it was never admitted into evidence. It is well settled that “evidence not properly and officially offered and introduced cannot be considered, even if physically placed in the record.” Ohm Lounge, L.L.C. v. Royal St. Charles Hotel, L.L.C., 2010-1303, p. 10-11, (La.App. 4 Cir. 9/21/11) 75 So.3d 471, 477 (citing De-noux v. Vessel Management Services, Inc., 07-2143, p. 6 (La.5/21/08), 983 So.2d 84, 88).
Mr. Jackson further argues that he has been prejudiced by the unavailability of the actual credit union statements that were introduced into evidence at trial. He contends that the copies that are contained within the record are copies of copies and are insufficient for this Court to conduct a proper [ ^review. He contends that the actual evidence introduced at trial is necessary to prove on appeal that a forgery occurred.
In State v. Walker, 2002-1350, pp. 10-11, (La.App. 4 Cir. 4/9/03), 844 So.2d 1060, 1066, this court stated:
La. Const, art. 1, § 19 provides that “[n]o person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all the evidence upon which the judgment is based.” (Emphasis added.) In State v. Ford, 338 So.2d 107 (La.1976), the Louisiana State Supreme Court stated as follows:
Without a complete record from which a transcript for appeal may be prepared, a defendant’s right of appellate review is rendered meaningless. A slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal would not cause us to reverse defendant’s conviction. But where a defendant’s attorney is unable, through no fault of his own, to review a substantial portion of the trial record for errors so that he may properly perform his duty as appellate counsel, the interests of justice require that a defendant be afforded a new, fully-recorded trial. Id. at 110.
The Walker court further stated:
*1027 In State v. Deruise, 98-0541 (La.4/8/01), 802 So.2d 1224, cert, denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001), the Louisiana Supreme Court set forth guidelines to be used to determine whether missing portions of a transcript in a criminal trial require reversal on appeal. That Court stated:
Both this Court and the United States Supreme Court have made clear that a criminal defendant has a right to a complete transcript of the trial proceedings, particularly, whereas here, appellate counsel was not counsel at trial. See Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964); State v. Robinson, 387 So.2d 1143 (La.1980). Further, in Louisiana, a defendant is constitutionally guaranteed the right of appeal “based upon a complete record of all the evidence upon which the judgment is based.” La. Const. Art. I, § 19. Thus, material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal will require reversal....
| i3On the other hand, inconsequential omissions or slight inaccuracies do not require reversal, as an incomplete record may nonetheless be adequate for appellate review. Id. at p. 10-11 and at 1234.
In the Deruise case, the court also stated that “a defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcripts”. Id. at p. 11 and at 1234.
Id., 2002-1350, pp. 11-12, 844 So.2d at 1066.
In Walker, the factual issue was the identification of an armed robber. This Court found that Mr. Walker was prejudiced by the absence from the record of the video tapes and photographic lineups from investigations in several armed robberies. See Walker, 2002-1350, p. 10, 844 So.2d at 1065-1066. In finding so, this Court noted that there was no in court identification of Mr. Walker. Id., 2002-1350, p. 13, 844 So.2d at 1067. The instant case is distinguishable.
Here, the only remaining count subject to our review is the November 28, 2008 count. On this count, the record on appeal is adequate for review. As stated earlier, the missing taped statement made by S.P. would not be subject to our review even if the trial court could locate it. On the testimonial and documentary evidence in the record, a rational trier of fact could have found that the State proved beyond a reasonable doubt the essential elements of felony carnal knowledge of a juvenile between Mr. Jackson and S.P. on November 28, 2008. Though S.P. had difficulty remembering the exact date of this incident, the date of the incident is not an essential element of the crime that needs to be proven by the State. Also, under the circumstances, the jury could reasonably infer that S.P. understood the meaning of sexual intercourse. During their deliberations the jury had the opportunity to review all evidence introduced at trial and to consider the demeanor of all of the witnesses. It is this Court’s |14opinion that Mr. Jackson has failed to show prejudice, and a new trial on the remaining count is not warranted.

CONCLUSION

For the foregoing reasons, the defendant’s conviction is affirmed as to the November 28, 2008 count of felony carnal knowledge of a juvenile. The defendant’s conviction is reversed as to the May 10, 2009 count of felony carnal knowledge of a juvenile. Accordingly, we vacate the sentence as to the May 10, 2009 count of felony carnal knowledge of a juvenile and remand the matter to the trial court for resentencing.
*1028 CONVICTION AFFIRMED IN PART/ REVERSED IN PART; SENTENCE VACATED, REMANDED FOR RESEN-TENCING
BAGNERIS, J., concurs in part and dissents in part.

.The 911 tape was played for the jury after being authenticated by Cindy Woods, an assistant communication supervisor with the New Orleans Police Department.

. Mr. Jackson’s date of birth is September 5, 1964. S.P.’s date of birth is February 22, 1993.

. S.P.'s mother confirmed this, suggesting that the removal was due to her drug use.

. Due to the nature of the allegations against Mr. Jackson and the fact that this student was a minor at the time of the accident, she is referred to by her initials.

. S.P.’s mother was at the hospital that evening as well, as she was the “emergency contact” for one of the other students involved in the accident.

. S.P.'s taped statement that was played for the jury may contain more details. The taped statement is not part of the record on appeal.

. The recorded statement was not preserved in the lower court, nor was it transcribed as part of the transcript.

. Mr. Jackson has not raised any arguments regarding the 911 tape or the photograph of him, both of which were admitted without objections.