844 So.2d 1060 (2003)
STATE of Louisiana
v.
Davis WALKER.
No. 2002-KA-1350.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 2003.
Harry F. Connick, District Attorney of Orleans Parish, Anne M. Dickerson, Assistant *1061 District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Kevin V. Boshea, New Orleans, LA, for Defendant/Appellant.
(Court Composed of Judge JOAN BERNARD ARMSTRONG, Judge TERRI F. LOVE, and Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.

STATEMENT OF THE CASE
The defendant, Davis Walker, was convicted on two counts of first degree robbery and one count of attempted first degree robbery. The defendant was also convicted of being a multiple offender. He was found not guilty of a count of armed robbery. He is appealing his convictions on the grounds that he had ineffective assistance of counsel, that there was insufficient evidence to convict him, and that he should not have been convicted as a multiple offender. He has also raised the issue of the appellate court's inability to review all the evidence presented at trial, because some of the physical evidence introduced at trial cannot now be located.

FACTS
On March 27, 1996, the defendant was arrested in Atlanta, Georgia as a result of information that had been transmitted from the New Orleans Police Department to the police department in Atlanta. The defendant was extradited to Orleans Parish where he was arraigned on June 11, 1997, on the following charges: (1) a charge of armed robbery at the E-Z Serve Store at 3434 St. Charles Avenue, New Orleans, Louisiana; (2) a charge of attempted first degree robbery at the Owl[1] Food Mart on Chef Menteur Highway in New Orleans, Louisiana; (3) a charge of first degree robbery at a Texaco Gas Station convenience store at 9232 Chef Menteur Highway, New Orleans, Louisiana; and (4) a charge of first degree robbery at the E-Z Serve Store at 3340 Orleans Avenue, New Orleans, Louisiana. The defendant pleaded not guilty to all charges at the arraignment. Beginning on April 7, 1998, the defendant was tried on all four charges. On April 9, 1998, he was found not guilty on the armed robbery count, but he was convicted on the two counts of first degree robbery and the count of attempted first degree robbery.
The defendant was charged as a multiple offender, and on June 27, 2000, a hearing on the multiple bill was held. On January 30, 2002, the defendant was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence as a triple offender on the conviction for attempted first degree robbery at the Owl Food Store, to ten years at hard labor on the conviction for first degree robbery at the Texaco Gas Station, and to twenty years at hard labor on the conviction for first degree robbery at the Orleans Avenue E-Z Serve Store. All sentences are to be served consecutively.[2]
Count 1: Armed Robbery of St. Charles Avenue E-Z Serv: Violation of La. R.S. 14:64
On January 17, 1996, New Orleans Police Department Officer Andrew Roccaforte *1062 responded to an armed robbery call at the E-Z Serve Store located at 3434 St. Charles Avenue, New Orleans, Louisiana. Officer Roccaforte testified at trial that he met with Ms. Nicole Harris, the cashier at the convenience store, who gave him a description of the perpetrator. At trial, Officer Roccaforte testified as to the description of the perpetrator, which he had written on a police report that was based on information received from Ms. Harris when he interviewed her.
Officer Roccaforte testified that Ms. Harris had described the perpetrator as being a black male with a brown complexion, who was approximately twenty-eight to thirty years old. He was described as being about five feet eight inches tall and weighing about one hundred and fifty pounds. He was wearing a green cap, a white bandanna underneath the cap, a gray and green sweater, and green pants.
The defendant was found not guilty on this count. Therefore, the jury's determination on this count is not being appealed.
Count 2: Attempted First Degree Robbery of Owl Food Mart: Violation of La. 14:(27)64.1
On January 17, 1996, New Orleans Police Department Officer Docia Bates responded to a call regarding an incident at the Owl Food Mart on Chef Menteur Highway in New Orleans, Louisiana. She testified at trial that when she went to the food mart, she interviewed a cashier at the store and prepared a police report that included a description of the perpetrator. Officer Bates testified that, according to the police report that she prepared, the perpetrator was a "black male, late twenties, five-foot-six, about a hundred and forty pounds" wearing "green pants, unknown type shirt, a beige or white dirty looking sweater". He was also wearing "a darkcolored bandana". Officer Bates also testified that she recovered from the security camera at the Owl Food Mart a videotape made the day the crime occurred. Finally, Officer Bates testified that the witness she interviewed when she initially investigated the robbery stated that the perpetrator drove away from the store in a "maroon or a burgundy Buick, a Buick Regal".
Ms. Kathrin T. Pratt also testified in connection with the incident at the Owl Food Mart. Ms. Pratt stated at trial that she was working with Ms. Carol Ann Atkinson, who was being trained as a cashier by Ms. Pratt. Ms. Pratt had gone into the back of the store, when she heard Ms. Atkinson having trouble with the cash register. When Ms. Pratt went to the front of the store to assist Ms. Atkinson, there was someone else in the front of the store. Ms. Pratt assumed this person had a weapon or a gun based on the person's appearance, and she testified that the person was asking Ms. Atkinson to give him money. Ms. Pratt testified that the person "was wearing a gray sweater with a large green stripe going across the front with a bandanna on his head and a baseball cap". Ms. Pratt further testified that she had viewed the videotape recovered by Officer Bates from the store's security camera and that it accurately depicted what had happened on January 17, 1996. The videotape was introduced into evidence as State's Exhibit 3.
Ms. Pratt further testified that she had been shown a photo line-up and from the line-up she had been able to identify the perpetrator of the Owl Food Mart robbery. The photo line-up was introduced into evidence as State's Exhibit 4.
The defendant was found guilty by the jury of an attempted first degree robbery at the Owl Food Mart. Although the jury viewed State's Exhibit 3 and State's Exhibit 4, these exhibits are unavailable for this Court to review on appeal. *1063 Count 3: First Degree Robbery of Texaco Gas Station Convenience Store: Violation of La. R.S. 14:64.1
At trial, Ms. Deshawn George testified that on January 17, 1996, while she was working at a Texaco Gas Station, a man walked into the convenience store associated with the station. Ms. George said that the man put something against her back, and asked her to open the store cash register. She opened the cash register, and the man took the money in it and left. Ms. George testified that she thought the man had a gun, but she could only identify some of the clothing he was wearing and could not identify his face. Ms. George testified that the man was wearing a "gray sweater with a stripe going across" and that the stripe was green or blue. The defendant was found guilty of this robbery by the jury.
Count 4: First Degree Robbery of Orleans Avenue E-Z Serv: Violation of La. R.S. 14:64.1
On January 17, 1996, New Orleans Police Department Officer Roland J. Doucette, Sr. responded to a robbery call at the E-Z Serve Store located at 3340 Orleans Avenue, New Orleans, Louisiana. Officer Doucette testified at trial that he met with the victim, Ms. Darlene Fogan Jones, who gave him a description of the perpetrator. Officer Doucette testified at trial that the robbery victim described the perpetrator as "a black male about five foot seven, about a hundred forty pounds". The perpetrator was further described as wearing "brown pants, beige shirt with blue wrap-around stripes" and black and white tennis shoes. Office Doucette also identified at trial a videotape made during the robbery by a security camera installed in the store, and the videotape was introduced into evidence as State's Exhibit 1. Ms. Jones testified at trial that the videotape accurately depicted what happened during the robbery. She testified that the perpetrator came into the store, walked past her to the store manager, then turned around and said, "Give me the money. I have a gun."
At trial, Antoinette Ashford, the manager of the Orleans Avenue E-Z Serve on January 17, 1996, testified that the perpetrator walked into the store and immediately came up to her and asked for some money. He then took approximately $130.00 from the cashier. Ms. Ashford testified that the perpetrator was wearing "some brown pants, a sweater with a strip [sic] in it, and a T-shirt under the sweater". She also testified that his clothes were not clean and that he wore a bandanna. Additionally, Ms. Ashford testified that she was able to identify one of the photographs in a photo line-up as the perpetrator's photograph. The photo lineup was introduced into evidence at the trial as State's Exhibit 2.
Mr. Walker was found guilty of this robbery by the jury. Although the jury viewed State's Exhibit 1 and State's Exhibit 2, these exhibits are unavailable for this Court to review on appeal.
Trial Testimony Regarding the Investigation
New Orleans Police Department Detective David Patrolia testified that he investigated the series of robberies with which the defendant was charged and that he developed the defendant as a suspect. Detective Patrolia testified that he noted similarities in the descriptions of the perpetrator that were given by the various victims. He also stated that he compared the perpetrator shown in the security camera videotapes to a photograph of the defendant and realized "there was no doubt it was him". Detective Patrolia also testified that he recovered the defendant's car from the residence of Aretha Cassimere Davis. Ms. Davis and the defendant had lived *1064 together at this residence, and Ms. Davis still lived there at the time the car was recovered. The car was a burgundy Buick Regal that fit the description of the car the perpetrator used to leave the Owl Food Mart.
Testimony for the Defense
The defendant testified at trial that he moved to Atlanta, Georgia in December of 1995, and that he was in Atlanta when the robberies occurred. He also testified that he was not the person seen on the security camera videotapes.
The defendant's father also testified at trial that he took his son to the bus station on December 9, 1995, and bought him a Greyhound bus ticket to Atlanta. He further testified that he sent money to him in Atlanta through Western Union.
Ms. Davis testified that she was the defendant's "common law" wife, that they had been living together for several years, but that he left in December of 1995. Ms. Cassimere testified that she knew the defendant was not in New Orleans on the date that the robberies occurred. She also stated that she was using the defendant's car on that date. She further denied telling any New Orleans police officers that she had seen the defendant a day or two before January 17, 1996. On rebuttal, however, Detective Patrolia testified that when he talked with Ms. Cassimere on January 27 or 28, 1996, she told him that she had seen the defendant on January 15 or 16, 1996, in New Orleans.

ASSIGNMENTS OF ERROR
ASSIGNMENT OF ERROR NO. ONE: The Defendant was Denied Effective Assistance of Counsel at Both Trial and Pre-Trial Proceedings Pursuant to Strickland v. Washington.
Because this Court is remanding this case to the trial court for a new trial, this issue need not be addressed at this time. Additionally, with regard to the issue of effective assistance of counsel, the Louisiana Supreme Court stated in State v. Prudholm, 446 So.2d 729 (La.1984), that "defendant's remedy is through post conviction relief in the trial court where the quality of the attorney's assistance can be fully developed and explored". Id. at 737.
ASSIGNMENT OF ERROR NO. TWO: The Jury Erred in Finding Defendant Guilty of Counts 2, 3, and 4 of the Bill of Information.
The defendant argues that he was convicted on insufficient evidence. In Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court discussed the standard to be used by an appellate court to evaluate whether the evidence is sufficient for a criminal conviction. That Court stated:
[t]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Woodby v. INS, 385 U.S., [276] at 282, 87 S.Ct. [483] at 486[, 17 L.Ed.2d 362 (1966)] (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Johnson v. Louisiana, 406 U.S., [356] at 362, 92 S.Ct. [1620] at 1624-1625[, 32 L.Ed.2d 152 (1972)]. This familiar standard gives full play to the responsibility *1065 of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law. 443 U.S. at 318-19, 99 S.Ct. at 2788-89 (footnotes omitted and emphasis in original).
See also State v. Mussall, 523 So.2d 1305 (La.1988); State v. Ragas, 98-0011 (La. App. 4 Cir. 7/28/99), 744 So.2d 99.
Because this Court is reversing the convictions on Counts 2 and 4, it is necessary to discuss the sufficiency of the evidence with respect to Count 3 only. The only evidence offered at trial in connection with Count 3 was the eyewitness testimony of Ms. George.
The only testimony Ms. George gave regarding the description of the perpetrator of the crime at the Texaco Gas Station convenience store was that he was wearing a gray sweater with a green or blue stripe. She also said that she could not identify his face. Although the description of the sweater generally matches the description of the sweater the perpetrator of the other robberies wore and the robbery at the Texaco Gas Station convenience store was located on the same highway as another of the robbery locations, this Court does not find that the evidence with respect to Count 3 meets the standard required by Jackson v. Virginia, discussed above. Even viewing the evidence in the light most favorable to the prosecution, this Court does not find that this evidence is a sufficient basis upon which to find the defendant guilty of Count 3 beyond a reasonable doubt. The evidence certainly suggests the defendant, but a suggestion is not enough to prove beyond a reasonable doubt that the defendant robbed Ms. George. Therefore, we vacate the defendant's conviction and the sentence with respect to Count 3.
ASSIGNMENT OF ERROR NOS. THREE AND FOUR: Trial Court Erred in Denying Motions for a New Trial and Trial Court Erred in Finding Defendant a Multiple Offender Pursuant to La. R.S. 15:529.1
Because this Court is remanding this case to the trial court for a new trial, these issues need not be addressed.
SUPPLEMENTAL ARGUMENT
The defendant argues that his right to review on appeal has been compromised. He argues that he is entitled to have this Court review a complete transcript of the trial proceedings but that certain items are missing from the record that is available for this Court to review. A thorough search for these items was ordered by this Court, but the trial court, the clerk of that court, the prosecutor's office, and the defense counsel have all certified that the missing items cannot be located after a diligent search.
The items that are missing from the record this Court has are (1) State's Exhibit 1, the security camera videotape of the robbery at the Orleans Street E-Z Serve store, (2) State's Exhibit 2, the photo lineup from which Ms. Ashford, one of the employees at the E-Z Serv, identified the defendant as the perpetrator of the crime at that store, (3) State's Exhibit 3, the security camera videotape of the incident at the Owl Food Mart, and (4) State's Exhibit 4, the photo lineup from which Ms. Pratt, the victim of the incident at the Owl *1066 Food Mart, identified the defendant as the perpetrator of the incident.
La. Const. art. 1, § 19 provides that "[n]o person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all the evidence upon which the judgment is phased." (Emphasis added.) In State v. Ford, 338 So.2d 107 (La.1976), the Louisiana State Supreme Court stated as follows:
Without a complete record from which a transcript for appeal may be prepared, a defendant's right of appellate review is rendered meaningless. A slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal would not cause us to reverse defendant's conviction. But where a defendant's attorney is unable, through no fault of his own, to review a substantial portion of the trial record for errors so that he may properly perform his duty as appellate counsel, the interests of justice require that a defendant be afforded a new, fully-recorded trial. Id. at 110. See also State v. Bright, XXXX-XXXX (La. App. 4 Cir. 2/6/02), 809 So.2d 1112.
This Court has reviewed its decision in State v. Tucker, 95-0030 (La.App. 4 Cir. 9/18/96), 682 So.2d 261, in which this Court stated that "where the missing portions of the trial record are not evidentiary, their absence does not compromise the defendant's constitutional right to a judicial review of all evidence." Id. at p. 4 and at 263. In Tucker, this Court affirmed the defendant's conviction even though the photographs used in a photo line-up were missing and not included in the record that was available for this Court to review. In Tucker, unlike in the instant case, the photo line-up was not introduced into evidence at the trial. Therefore, the evidentiary portion of the trial was made part of the appellate record, and reversal was not mandated in Tucker. In the instant case, however, this Court does not have before it all of the evidentiary portion of the record.
In State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001), the Louisiana Supreme Court set forth guidelines to be used to determine whether missing portions of a transcript in a criminal trial require reversal on appeal. That Court stated:
Both this court and the United States Supreme Court have made clear that a criminal defendant has a right to a complete transcript of the trial proceedings, particularly, where as here, appellate counsel was not counsel at trial. See Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964); State v. Robinson, 387 So.2d 1143 (La. 1980). Further, in Louisiana, a defendant is constitutionally guaranteed the right of appeal "based upon a complete record of all the evidence upon which the judgment is based." La. Const. Art. I, § 19. Thus, material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal will require reversal....
On the other hand, inconsequential omissions or slight inaccuracies do not require reversal, as an incomplete record may nonetheless be adequate for appellate review. Id. at p. 10-11 and at 1234.
In the Deruise case, the Court also stated that "a defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcripts". Id. at p. 11 and at 1234.
Applying the guidelines set forth in the Deruise case to the instant case, this Court finds that the defendant is clearly prejudiced by not having the missing evidentiary *1067 exhibits that were introduced at trial. These exhibits were the critical evidence considered by the jury in finding the defendant guilty of first degree robbery of the Orleans Avenue E-Z Serv and attempted first degree robbery of the Owl Food Mart. The videotapes and the photographs relating to the Owl Food Mart incident constituted the physical evidence that resulted in the defendant being sentenced to life in prison without the possibility of parole, probation, or suspension of sentence. Not only does this Court not have available for review on appeal the critical evidence in the instant case, appellate counsel is also denied the opportunity to review the evidence that resulted in his client, the defendant, receiving a life sentence. In the instant case, appellate counsel is not the same as trial counsel, so appellate counsel has never had the opportunity to review the physical evidence upon which his client was convicted. This is clearly prejudicial to the defendant.
Additionally, this case is one in which the defendant was convicted solely because he was identified from three types of evidence: videotapes of the crimes, photo line-ups, and testimony describing the perpetrator and his clothing. There was, however, no in court identification of the defendant by any of the witnesses. Any weapon the perpetrator may have had was never recovered, the perpetrator's clothing was never recovered, the proceeds of the robbery were not recovered, and no fingerprints were recovered. The defendant was not arrested until more than two months after the crimes, and he was arrested in another state. The jury convicted the defendant based on his identity as the perpetrator determined from the missing videotapes, the missing photo line-ups, and the testimony at trial. The only portion of this evidence that is available for review on appeal is the testimony describing the perpetrator and his clothing. The perpetrator was described as a black man between five feet six and five feet eight inches tall weighing between one hundred forty and one hundred fifty pounds. The testimony identifying the clothing worn by the perpetrator described similar, but not identical, items of clothing, clothing that was never recovered and, therefore, not introduced at trial. Because this Court believes that the missing videotapes and the missing photo line-ups were very significant items of evidence, and we must assume that they were heavily relied upon by the jury to convict the defendant, it would be both grossly unfair and unconstitutional under Article 1, § 19 of the Louisiana Constitution for this Court to review the record in this case without all of the critical evidence.
Although this Court assumes that the jury was correct in its determination of the defendant's guilt in the crimes that occurred at the two stores that had security cameras that videotaped the crimes, the Louisiana Constitution does not permit this Court to rely on the jury's verdict without a review of the entire record of the trial. There were critical items of physical evidence introduced at the defendant's trial, and it is this Court's constitutional duty to review that evidence, as well as the rest of the record of the trial proceedings, to determine whether the defendant has received a fair trial that comports with the requirements of law, including the Louisiana Constitution and the United States Constitution. In this case, this Court cannot do this, because the critical evidence is missing. We are, therefore, bound to reverse the defendant's convictions for attempted first degree robbery of the Owl Food Mart and for first degree robbery of the Orleans Avenue E-Z Serv. Because this Court is reversing the conviction of the crime for which the defendant was charged and convicted as a multiple offender, *1068 his adjudication as a multiple offender pursuant to La. R.S. 15:529.1 must be reversed, also.

CONCLUSION
The defendant's conviction and sentence on Count 3 are vacated. His convictions on Count 2 and Count 4 are reversed, and this case is remanded to the trial court for a new trial on Count 2 and Count 4 and for further proceedings in accordance with this opinion.
CONVICTION AND SENTENCE VACATED ON ONE COUNT, REVERSED AND REMANDED FOR NEW TRIAL ON REMAINING COUNTS.
NOTES
[1] The Owl Food Mart is also referred to in the record as the Owel Food Mart.
[2] In the original bill of information, the defendant was charged with five counts, but the first count was severed from the others prior to the trial. Therefore, in this opinion Count 1, Count 2, Count 3, and Count 4 are Count 2, Count 3, Count 4, and Count 5, respectively, in the original bill of information. The counts in the bill of information, as read at trial, however, match the counts as they are designated in this opinion.