MAX N. TOBIAS, JR., Judge.
 

 11 Michael S. Fortenberry (“Fortenber-ry”), the defendant, was charged with theft of goods, a violation of La. R.S. 14:67.10. He was arraigned on 19 March 2010, at which time he was informed of his right to a jury trial. On 23 April 2010, the trial court found no probable cause for continued detention after a preliminary hearing.
 

 On 30 July 2010 Fortenberry was tried before a judge. The minutes reflect that he appeared represented by counsel, and that the court “advised the defendant of his right to trial by judge or jury.” The minutes also state that “the defendant elected to have a trial by judge.” The judge found him guilty as charged.
 

 After being found a two-time multiple offender, Fortenberry was sentenced to one year at hard labor, with credit for time served. This appeal follows.
 

 
 *393
 

 STATEMENT OF FACTS
 

 Keith Evans is a manager at the Rouse’s Supermarket meat department located on Tchoupitoulas Street in New Orleans. On 4 February 2010, he observed Fortenberry empty meat from a four-foot section of the Rouse’s meat section into a shopping cart. The upper basket of the shopping cart had multiple empty Rouse’s plastic bags, and something else was sitting on top of the bags. Mr. |2Evans observed Fortenberry take the basket halfway down aisle 13. Fortenberry proceeded to place the meat into plastic grocery bags, like the bags in the upper basket, while walking slowly, as though shopping. His hands moved quickly as he filled the bags.
 

 Mr. Evans returned to his department and called Robert James, the store director, to inform him of Fortenberry’s activities. Mr. Evans then went down aisle 14 — next to aisle 13 — and beat Fortenber-ry to the front of the store. Mr. Evans met Mr. James at customer service. He waited for Fortenberry at the exit.
 

 Mr. Evans also told Edwin Callia, the assistant manager, what was happening. Mr. Callia observed Fortenberry filling the bags and estimated he had at least ten packs of meat. Mr. Callia also estimated the goods to be worth over three hundred dollars. Mr. James went to aisle 13 briefly too, saw Fortenberry, and went to wait for him at the front office. He has worked for Rouse’s for ten years, and he opined that it was very unusual for someone to bag their own groceries in an aisle. Based on this activity, Mr. James immediately thought Fortenberry was shoplifting. However, he elected to wait and see what would happen.
 

 According to Mr. Evans, Fortenberry pushed the cart through a closed register lane when he came out of aisle 13. According to Mr. Callia and Mr. James, For-tenberry left the cart in front of the register and walked through the register aisle carrying the bags. He then proceeded out the exit. Based on his experience, Mr. James opined that walking through a register aisle without paying for merchandise shows “obvious intent” to shoplift. He always waits until shoplifters reach the door to stop them.
 

 To exit the store, one must go through two sets of doors — one after the other. Mr. James generally waits until shoplifters cross the threshold of the first set |sof doors to stop them. Mr. Evans situated himself between the doors. As the doors opened for Fortenberry, he was asked for a receipt for the goods in the shopping cart. Fortenberry was unable to produce one.
 

 Fortenberry insisted his wallet was in his truck. He was escorted outside, where a man and a woman were in the truck. No wallet was found. Fortenberry was escorted back into the store and the police were called.
 

 Mr. Evans testified that he thought the value of the goods taken was over $300. According to him, the store manager directed the “front end manager” to “run a receipt” for the goods Fortenberry had in his cart. Mr. Evans identified the receipt in court as reflective of the items Forten-berry took. It identified the items and was dated 4 February 2010. Mr. James also identified “the receipt we scanned of the merchandise that [Fortenberry] walked out with.” It was introduced at trial as S-l and indicated a total of the items to be $322.30.
 

 ERRORS PATENT
 

 The record reveals no errors patent.
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 Fortenberry argues that this case must be remanded to determine whether he knowingly and intelligently waived his
 
 *394
 
 right to a jury trial because the record fails to show he knowingly and intelligently waived said right.
 

 Pursuant to La.C.Cr.P. art. 780, a defendant to a non-capital charge may “knowingly and intelligently” waive the right to a jury trial. The trial court “shall” inform the defendant of the right to a jury trial at arraignment. La.C.Cr.P. art. 780(A). Moreover, a defendant “shall exercise his right to waive trial by jury in accordance with the time limits set forth in Article 521.” La.C.Cr.P. art. 780 B. |„La. C. Cr. P. art. 521 requires that “[pjretrial motions shall be made or filed within fifteen days after arraignment, unless a different time is provided by law or fixed by the court ... upon a showing of good cause that fifteen days is inadequate.” However, at the time of Fortenberry’s trial,
 
 [1]
 
 a defendant could exercise the right to waive the right to a jury trial at any time prior to commencement of trial with permission of the trial court. La.C.Cr.P. art. 780 B.
 

 The docket master and the minutes reflect that Fortenberry was “INFORMED OF RIGHT TO TRIAL BY JUDGE OR JURY” at his arraignment; such complies with La.C.Cr.P. art. 780 A. The docket master shows Fortenberry waived his right to a jury trial on the day of trial, 30 July 2010. The docket master also reflects that he was represented by counsel and “DEFENDANT ELECTED TRIAL BY JUDGE.” The minutes reflect that For-tenberry appeared represented by counsel, and that the court “ADVISED THE DEFENDANT OF HIS RIGHT TO TRIAL BY JUDGE OR JURY.” The minutes also state that, “THE DEFENDANT ELECTED TO HAVE TRIAL BY JUDGE.” Mary Beth Meyer, the official court reporter for Section “A” of the Orleans Parish Criminal District Court, issued a 7 February 2011 certificate, stating that she had searched her notes and tapes for an 23 April 2010 hearing and the 30 July 2010 trial and “was unable to find on the record where the defendant, nor his lawyer, waived his right to a jury trial and selected a judge trial.” Ms. Meyer further stated, “[t]he fact appears in the minute entry of July 30, 2010, but is not confirmed in open court.”
 

 A defendant’s decision to waive the right to a jury trial must be “knowingly and intelligently” made. La.C.Cr.P. art. 780 A. Waiver cannot be presumed and |smust be established by a contemporaneous record setting forth the articulated appraisal of the right followed by a knowing and intelligent waiver by the accused.
 
 State v. Jones,
 
 99-2595, p. 8 (La.App. 4 Cir. 11/8/00), 773 So.2d 234, 239. Where no evidence in the record exists showing a defendant specifically waived the right to a jury trial, the case must be remanded for an evidentiary hearing to determine whether the defendant knowingly waived this right.
 
 State v. Thompson,
 
 02-1682, 02-1683, 02-1684, 02-1685, p. 22 (La.App. 4 Cir. 5/21/03), 848 So.2d 703, 709;
 
 State v. Moses,
 
 01-0909, p. 4 (La.App. 4 Cir. 12/27/01), 806 So.2d 83, 86,
 
 analyzing State v. Nanlal,
 
 97-0786 (La.9/26/97), 701 So.2d 964. Moreover, where a conflict exists between a minute entry and a transcript, the transcript controls.
 
 State v. Randall,
 
 10-0027, p. 3 (La.App. 4 Cir. 10/27/10), 51 So.3d 799, 802;
 
 State v. Lynch,
 
 441 So.2d 732 (La.1983).
 

 In this case, the minute entries and docket master indicate that Fortenberry waived his right to a trial by jury immedi
 
 *395
 
 ately prior to trial. However, Ms. Meyer’s certificate reflects that a review of her recordings and notes fails to show any waiver was made. Under these circumstances, the controlling documentation— the transcript — fails to show Fortenberry knowingly and intelligently waived his right to a jury trial. The trial transcript contradicts the minutes. If Fortenberry was informed by the court of his right to a jury trial and knowingly and intelligently waived that right, it would have been present in Ms. Meyer’s recording of the trial and her notes.
 

 The state points to
 
 State v. Hall,
 
 99-2887, p. 17 (La.App. 4 Cir. 10/4/00), 775 So.2d 52, 63, wherein this court stated:
 

 | (¡The sentencing transcript does not reflect whether or not defense counsel was present prior to and/or at the moment of sentencing, but does affirmatively show he was present at the hearing after sentencing. This “silence” in the transcript and defendant’s interpretation of the postsentencing [sic] colloquy between defense counsel and the trial court is not sufficient to rebut the presumption established by the minute and docket master entries that defense counsel was in fact present for sentencing.
 

 The state argues that silence in a transcript is insufficient to “rebut the presumption established by the minute and docket master entries.” However the state cites no authority to support its assertion that minute entries and docket masters establish a presumption. In
 
 Hall,
 
 we noted that the transcript showed that defense counsel was present to move for appeal. 99-2887, p. 17, 775 So.2d at 63. The transcript containing the motion appeared immediately after the sentencing transcript, and the docket master reflected that both the sentencing and the motion for appeal occurred on the same date.
 
 Id.
 
 The instant case is distinguishable. Nothing in the transcript confirms that Forten-berry knowingly and intelligently waived his right to a jury trial. Under the facts of this case — where the court reporter was unable to find any evidence in her notes or her recording of the trial of a knowing and intelligent waiver of the right to a jury trial — this case must be remanded for a hearing to determine whether Fortenberry knowingly and intelligently waived his right to a trial by a jury.
 

 ASSIGNMENT OF ERROR NUMBER 2
 

 In his second assignment of error, Fortenberry asserts that the evidence is insufficient to support his conviction because the state failed to prove the value of the misappropriated goods was between $300 and $500. The significance of this argument is that it impacts his sentence. He also asserts that his defense on appeal 17suffers prejudice from the absence from the record of the receipt admitted at trial showing the value of the groceries after they were scanned. He does not challenge any other facts supporting his conviction other than the value of the goods taken.
 

 When assessing the sufficiency of evidence to support a conviction, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have found the defendant guilty beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 309, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This review must include the whole record, as a rational fact finder does.
 
 State v. Mussall,
 
 523 So.2d 1305, 1310 (La.1988). If a rational finder of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all of the evidence most favorable to the prosecution must be adopted.
 
 Id.
 
 It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence.
 
 State
 
 
 *396
 

 v. Johnson,
 
 619 So.2d 1102 (La.App. 4 Cir.1993), citing
 
 State v. Rosiere,
 
 488 So.2d 965, 968 (La.1986). Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the fact finder.
 
 State v. Brumfield,
 
 93-2404, p. 5-6 (La.App. 4 Cir. 6/15/94), 639 So.2d 312, 316. Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency.
 
 State v. Jones,
 
 537 So.2d 1244, 1249 (La.App. 4 Cir.1989). Like all factual matters, credibility determinations are entitled to great weight and will not be disturbed unless contrary to the evidence.
 
 Id.,
 
 citing
 
 State v. Vessell,
 
 450 So.2d 938 (La.1984). Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness’s testimony, if believed by the fact finder, is sufficient to support a factual conclusion.
 
 State v. Marshall,
 
 04-3139, p. 9 (La.11/29/06), 943 So.2d 362, 369.
 

 |sLa. R.S. 14:67.10 B(2), as written at the time of the offense,
 
 [2]
 
 provided a penalty of up to two years for theft of goods valued at $300 to $500.
 

 The state’s witnesses at trial testified that the value of the groceries was just over $300. Mr. Callia, the assistant manager, observed Fortenberry filling the bags in the aisle and estimated that he had at least ten packs of meat. Mr. Callia estimated their value at over $300. Both Mr. Evans — the meat department manager — and Mr. James — store director — testified that the items confiscated from For-tenberry were scanned, and a receipt was printed out, evidencing the value of the items Mr. Fortenberry was attempting to take. Both Mr. Evans and Mr. James testified that the value of the items was over $300. They also both identified the receipt as reflective of the items Forten-berry attempted to take. When the state introduced S-l without objection, the assistant district attorney noted that it was “the receipt indicating that the value of the items in this case is $322.30.” Viewing the testimony of Mr. Callia, Mr. Evans and Mr. James, along with the trial transcript evidencing introduction of a receipt at trial, in a light favorable to the state, we are able to conclude, even in the absence of Exhibit S-l, that the value of the meat was over $300. We reach this conclusion based upon the fact that the meat was scanned at the store to obtain a total of the value of the meat. We understand scanning to have been performed at a cash register. Wfliat we do not know is whether the scanned total of $322.30 included or excluded the applicable sales tax. To the store, the value of the meat is without sales tax; that is, as owner of the meat, the store, paid no sales tax on the meat. To someone outside the store who has purchased the meat, the value thereof is the cost of the meat plus the sales |9tax paid thereon. We take judicial notice of the fact that on 4 February 2010 the combined Louisiana and Orleans Parish sales tax on food, such as meat, was 4.5%. Assuming missing Exhibit S-l included the sales taxes, the value of the meat would be $308.42; that is, $308.42 plus the 4.5% sales tax equals $322.30. If the Exhibit S-1 merely showed the total value of the meat, then the value is $322.30. In either case, the value is over $300.
 

 Fortenberry complains that the receipt introduced at trial is missing and that he is prejudiced thereby, citing
 
 State v. Walker,
 
 02-1350 (La.App. 4 Cir. 4/9/03), 844 So.2d 1060.
 

 In
 
 Walker,
 
 we said:
 

 
 *397
 
 La. Const, art. 1 [sic], § 19 provides that “[n]o person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a
 
 complete record of all the evidence
 
 upon which the judgment is based.” (Emphasis added.) In
 
 State v. Ford,
 
 388 So.2d 107 (La.1976), the Louisiana State Supreme Court stated as follows:
 

 Without a complete record from which a transcript for appeal may be prepared, a defendant’s right of appellate review is rendered meaningless. A slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal would not cause us to reverse defendant’s conviction. But where a defendant’s attorney is unable, through no fault of his own, to review a substantial portion of the trial record for errors so that he may properly perform his duty as appellate counsel, the interests of justice require that a defendant be afforded a new, fully-recorded trial.
 
 Id.
 
 at 110.
 

 [[Image here]]
 

 In
 
 State v. Deruise,
 
 98-0541 (La.4/3/01), 802 So.2d 1224,
 
 cert. denied,
 
 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001), the Louisiana Supreme Court set forth guidelines to be used to determine whether 110missing portions of a transcript in a criminal trial require reversal on appeal. That Court stated:
 

 Both this court and the United States Supreme Court have made clear that a criminal defendant has a right to a complete transcript of the trial proceedings, particularly, where as [sic] here, appellate counsel was not counsel at trial.
 
 See Hardy v. United States,
 
 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964);
 
 State v. Robinson,
 
 387 So.2d 1143 (La.1980). Further, in Louisiana, a defendant is constitutionally guaranteed the right of appeal “based upon a complete record of all the evidence upon which the judgment is based.” La. Const. Art. I, § 19. Thus, material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal will require reversal....
 

 On the other hand, inconsequential omissions or slight inaccuracies do not require reversal, as an incomplete record may nonetheless be adequate for appellate review.
 
 Id.
 
 at p. 10-11 and at 1234.
 

 In the
 
 Demise
 
 case, the Court also stated that “a defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcripts”.
 
 Id.
 
 at p. 11 and at 1234.
 

 Id.,
 
 02-1350, pp. 11-12, 844 So.2d at 1066 [emphasis in original].
 

 In
 
 Walker,
 
 the factual issue was identification of an armed robber, and this Court found that he was prejudiced by the absence of the following evidence from the record: video tapes and photographic lineups from investigations in several armed robberies.
 
 See Id.,
 
 02-1350, p. 10, 844 So.2d at 1065-1066. In doing so, this court noted the absence of an in-court identification of the defendant.
 
 Id.,
 
 02-1350, p. 13, 844 So.2d at 1067.
 
 Walker
 
 is distinguishable and inapplicable to the facts of the case before us.
 

 Inin this case, Mr. Evans and Mr. James identified the receipt at trial. The assistant district attorney noted the amount of $322.30 when it was introduced into the record. Fortenberry makes no attempt — other than a conclusive allegation and the citation to
 
 Walker
 
 — to show any prejudice from the absence of the receipt, Exhibit S-l. Mr. Evans, Mr. Cal-lia, and Mr. James all saw the items For-tenberry stole and are all experienced in
 
 *398
 
 knowing the value of groceries. The current absence of a single piece of paper from the record in no way vitiates the evidentiary value of the record on appeal, given the testimony about the receipt in the trial transcript. Accordingly, this assignment of error lacks merit.
 

 CONCLUSION
 

 The record contains sufficient evidence to sustain the conviction, and Fortenberry has shown no prejudice from any incomplete record. However, the record fails to show that Fortenberry knowingly and intelligently waived his right to a trial by jury. Accordingly, we conditionally affirm the conviction and sentence of Fortenberry; but the case is remanded, in accordance with
 
 State v. Nanlal,
 
 97-0786 (La.9/26/97), 701 So.2d 963, for a hearing to determine whether Fortenberry knowingly and intelligently waived his right to a jury trial. If he did not knowingly and intelligently waive his right to a jury trial, then he is entitled to a new trial in accordance with law.
 

 CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED; REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 . La. Const. Art. I, § 17, relative to jury trials in criminal cases, was amended by 2010 La. Acts No. 1053 § 1, approved 2 November 2010, to require that a defendant may waive his right to a jury trial no later than forty-five days prior to trial. Act 1053 is inapplicable to Fortenberry's case.
 

 [2]
 

 . La. R.S. 14:67.10 B(2) was amended by 2010 La. Acts, No. 585, § 1, effective 15 August 2010. The crime in this case was committed on 4 February 2010, before the amendment.