EDWIN A. LOMBARD, Judge.
hThe defendant, Dwayne Diaz, appeals his conviction for possession of a firearm by a felon. After review of the record in light of the applicable law and arguments of the parties, we affirm the defendant’s conviction and sentence;

Relevant Facts and Procedural History

On September 12, 2013, at approximately 6 a.m., the Gulf Coast Regional Fugitive Task Force under team leader U.S. Marshall Jake Credo served an arrest for armed robbery on the defendant at 8925' Palm Street, the defendant’s reported residence. The defendant opened the door and, as’ requested, stepped outside and identified himself. The defendant was arrested and, pursuant to Miranda v. Arizona, advised of his rights.
On November 8, 2013, the defendant was charged with one count of armed robbery in violation of La. Rev. Stat. 14:64 (count 1) and two counts of possession of a firearm by a felon in violation of La.- Rev. Stat. 14:95.1 (counts 2 and 3). He pleaded *676 not guilty at his arraignment on November 18, 2013. His motion to suppress the evidence was denied on December 19, 2013, and on February 12, | g2014, he went to trial on count 3, felon in possession of a firearm. On February 13, 2014, the jury found the defendant guilty as charged.[1]
On March 24, 2014, the district court sentenced the defendant to twenty years at hard labor and denied his motions for new trial, post-verdict judgment of acquittal, and for reconsideration of sentence. The State filed a multiple bill charging the defendant as a third felony offender and, on February 20, 2015, the district court adjudged the defendant a third felony offender and re-sentenced him to thirteen years and six months at hard labor.
This appeal is timely filed.

Error Patent Review

A review for errors patent reveals one. The district court found that the defendant was a third offender. The pertinent statute, La. Rev. Stat. 15:529.1(G) provides that a sentence as a third offender must be imposed without the benefit of probation or suspension of sentence. In this case, the district court failed to include these prohibitions when imposing the sentence. However, pursuant to La. Rev. Stat. 15:301.1(A) the sentence is deemed to have been imposed with these restrictions of benefits even in the absence of the district court delineating them. State v. Williams, 2000-1725, pp. 10-11 (La.11/28/Dl), 800 So.2d 790, 798-99. Therefore, we need not correct this sentence. There are no other patent errors.

Sufficiency of the Evidence

The defendant concedes he was a convicted felon but asserts that the evidence is insufficient to support his conviction because the State failed to prove |athat he had possession of the firearm in question.[2]
Pursuant to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to resolve an insufficiency claim we review the evidence to determine whether, when viewed in the light most favorable to the prosecution, it is sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. “The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony; thus, a reviewing court may impinge on the fact finder’s discretion only to the extent necessary to guarantee the fundamental due process of law.” State v. Johnson, 2003-1228, p. 4-5, (La.4/14/04), 870 So.2d 995, 998 (citations and internal punctuation omitted). To support a conviction of possession of a firearm by a convicted felon, a violation of La. Rev. Stat. 14:95.1, the State must prove beyond a reasonable doubt that the defendant intentionally possessed a firearm, had been convicted of a prior enumerated felony within the ten-year statutory time limitation, and had the intent to commit the offense. State v. Haddad, 99-1272, p. 2, n. 2 (La.2/29/00), 767 So.2d 682, 684, fn. 2 (citation omitted).
Possession may be actual or constructive. Johnson, 2003-1228, p. 5, 870 So.2d at 998. The defendant’s intent may be inferred from the circumstances and proved by direct or circumstantial evidence. Id. (citations omitted); Hearold, *677 603 So.2d at 735; La. Rev. Stat. 14:10. “Constructive possession of a firearm occurs when the firearm is subject to the defendant’s dominion and control.” Johnson, 2003-1228, p. 5, 870 So.2d at 998 (citing State v. Mose, 412 So.2d 584, 585 (La.65 41982) for the proposition that a gun located in the defendant’s bedroom was sufficient for constructive possession); but see State v. Haddad, 99-1272, p. 2, n. 2, 767 So.2d at 684, fn. 2 (“When the perpetrator has not carried the firearm on his person, the State must show that the defendant’s intent amounted to an intent to possess rather than a mere acquiescence to the fact that there was a firearm in his presence.”)
The following evidence was adduced at trial. Marshall Credo testified that after the defendant was arrested and given his Miranda warnings, based upon his revelation that his girlfriend was in the residence, the task force officers asked her to step out on the porch and, after obtaining the defendant’s consent to enter and search the residence, Marshall Credo conducted a protective sweep of the area for officer safety. Because the defendant was attired only in pajama pants and clothes would have to be obtained for him to be transported to the police station, the protective sweep included the bedrooms in the residence. As Marshall Credo entered the middle bedroom, he observed a shotgun leaning against the wall and a utility bill addressed to the defendant at 8925 Palm Street. He directed task force member Sergeant Michael Crawford of the New Orleans Police Department (NOPD) to seize the shotgun and utility bill.
Marshall Credo testified that the defendant admitted in the presence of the officers and his girlfriend that the shotgun belonged to him and his girlfriend did not at that time dispute what the defendant said or claim that she owned the shotgun. Further, the defendant told Marshall Credo that “he would be stupid to live in the neighborhood that he lived in and not have a gun.” Marshall Credo identified the defendant at trial as the man who admitted owning the shotgun found in the Palm Street residence.
^Sergeant Crawford testified that he met Marshall Credo and other task force members at the Palm Street residence pri- or to those officers exiting the area and that he initially observed the loaded shotgun resting against the bedroom wall. According to Sergeant Crawford, when he was unable to unload the shotgun, the defendant instructed him on how to do so. Finally, Sergeant Crawford testified that he assigned Detective Michael Pierce the task of writing the police report pertinent to the NOPD’s participation in the defendant’s arrest.
Deputy James P. Huey of the Orleans Parish Sheriffs Office Communications Department testified that he was the custodian of the recordings of jailhouse calls made by inmates and identified the detail report of the defendant’s calls. The State then played the recording of the calls for the jury.[3]
*678 Detective Pierce, called by the defense, testified that he observed the twelve-gauge shotgun weapon in the residence and logged it into evidence at the police station. On cross-examination, Detective Pierce recalled writing in his police report that Marshall Credo said the defendant told him his brother gave him the shotgun.
.Ms. Willow White, the defendant’s girlfriend, testified on his behalf. She recounted the events leading up to the defendant’s arrest, reiterating that they were asleep in the Palm Street residence when awakened by a knock on the door at 6:00 a.m. She remained in bed while the defendant answered the door but, after a few | ¿moments, she retrieved her shotgun from her closet (where she always kept it), placed it in the corner of the bedroom, and got back into bed. She explained that the defendant did not know that she had the shotgun because she kept it hidden in the closet and always supervised the defendant’s presence in the residence. Ms. White said she purchased the shotgun from a “guy off the streets.” She did not know the name of the man who sold her the weapon. She said she purchased the weapon for protection because her home on New Orleans Street had been burglarized in April 2012.
Ms. White declared that the defendant stayed with her at the Palm Street residence a couple nights a week because he had no transportation and it was easier to get to his employment from her residence. She stated that she signed the lease on the Palm Street residence and that the defendant was not listed as a lease holder or occupant of the premises and did not pay rent. According to Ms. White, the defendant’s name was only on the utility bills for Palm Street to help her out because her bad credit rating would not permit her to obtain services in her name.
Ms. White also testified that she attempted to give the District Attorney’s Office some. information on the day the defendant was arrested, but no one would listen to her.[4] She conceded that she spoke with the defendant at lockup regarding the brand and serial number of the shotgun and about getting in touch with the District Attorney and executing an affidavit to clear up the matter. Ms. White said she was not offered anything in exchange for her testimony, she was not pressured to come to trial, and the defendant did not ask her to testify.
17Puring cross-examination, however, Ms. White conceded that the defendant said he would pay any legal fees she might incur on his behalf. After the State replayed the audio of one of the defendant’s jailhouse conversations with Ms. White, she admitted telling the defendant: “I talked to my grandmother. Is this going to stop me from getting my degree?” To which she said the defendant replied: “This is only a misdemeanor for you. It is no problem.”
Ms. White maintained that the defendant was just trying to protect her by claiming ownership of the weapon and she did not tell the officers at that time that the shotgun actually belonged to her because she was scared and had never before been in trouble. On cross-examination, Ms. White conceded that the defendant told her in a jailhouse conversation that *679 “You got to make that affidavit real good, like legit” and instructed her to “[w]rite this down ... [t]he make and model of the gun.” She farther admitted that the defendant told her, “All you got to say is your grandfather gave you that because you stayed in Hollygrove” and that she responded she would “[m]ake it seem — I’ll make it seem like I’m a woman who needed a gun.”
On re-direct, Ms. White admitted that she did not give the District Attorney an affidavit stating that the shotgun belonged to her. Moreover, she did not know what type of gun it was, how to load or shoot it, and, in fact, had never used it.
Viewing in the light most favorable to the prosecution, the evidence is sufficient to support the defendant’s conviction “for being a felon in possession of a firearm. He initially admitted to Marshall Credo that he owned it and, in fact, instructed Sergeant Crawford'on how to unload the shotgun. Moreover, Marshall Credo found the shotgun leaning against the wall wheré the defendant had been sleeping. Although Ms. White’s testimony contradicted this evidence, a trier of 18fact’s determination as to the credibility of a witness is entitled to great weight and will not be disturbed unless it is cléarly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984). Accordingly, this assignment of error has no merit.

Suppression of Evidence

The defendant also argues that the district court erred in failing to suppress the evidence and his statements. He argues that the “protective sweep” performed by Marshall Credo incident to executing the arrest warrant was unnecessary under the circumstances of this case and, thus, the resulting search was illegal requiring suppression of the evidence and subsequent statements.
The Fourth Amendment bars only unreasonable searches and seizures. Maryland v. Buie, 494 U.S. 325, 331, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Because the risk of danger in the context of a house arrest is high, the U.S. 'Supreme Court held in Buie that the police may conduct a protective sweep of the premises after an arrest to ensure their safety if there are “articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that.-the area to be swept harbors an individual posing a danger to those on the arrest scene.” Buie, 494 U.S. at 334, 110 S.Ct. 1093.
In this case, Marshall Credo testified that the defendant was arrested clad only in sleeping clothes, and, because the officers would have to enter the residence to allow the defendant tq dress before he went to jail, the security sweep was conducted to eliminate the possibility of danger posed by someone who may have been in the residence. Marshall Credo described the residence as a shotgun style— living room, short hallway, bathroom, bedroom and a kitchen — and testified that, although they did not search the entire house, when they entered the bedroom they observed a fully loaded, twelve gauge shotgun propped against the wall, next to the | defendant’s bed, as well as the utility bill addressed to the defendant at -8925 Palm Street. Under these circumstances, the protective sweep was not unreasonable and because the -shotgun and utility bill were in plain view, .their seizure was permissible. See State v. Arnold, 2011-0626, p. 1, (La.4/27/11), 60 So.3d 599, 600; Horton v. California, 496 U.S. 128, 135-136, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).
This assignment of error is without merit.

*680
Violation of Right to Appellate Review

Finally, the defendant argues that record deficiencies in this case (the missing recorded jailhouse calls) violates his constitutional right to appellate review based on a complete record.
La. Const, art. I, § 19 provides that “[n]o person shall be subjected to imprisonment ... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based.” In felony cases, the recording of “all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel” is statutorily required. La. Code Crim. Proc. art. 843; see also State v. Landry, 97-0499, p. 3 (La.6/29/99), 751 So.2d 214, 215 (criminal defendant has a right to a complete transcript of his trial proceedings, particularly where appellate counsel on appeal was not also trial counsel). However, to justify reversal of a conviction and the ordering of a new trial, an omission from the trial record must affect the “substantial rights of the accused.” La. Code Crim. Proc. art 921. Thus, even though it may be reversible error when material portions of the trial record are unavailable or incomplete, a “slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal” does Imnot require reversal of a conviction. State v. Campbell, 2006-0286, p. 99 (La.5/21/08), 983 So.2d 810, 872 (citations omitted). In some circumstances, an incomplete record may be adequate for appellate review and, therefore, a defendant is not entitled to relief on the basis of an incomplete record absent a showing that he was prejudiced by the missing portions of the record. Campbell, 2006-0286, p. 99, 983 So.2d at 872-873 (citations omitted).
In this case, the recording of the jailhouse calls was not material to the conviction in light of all of the other evidence of guilt produced by the State. The defendant’s reliance on State v. Walker, 2002-1350 (La.App. 4 Cir. 4/9/03), 844 So.2d 1060, is misplaced. In Walker, the missing evidence was the security camera footage and photo-lineup pictures from which witnesses to the two charged crimes had identified the defendant as the perpetrator. Id., 2002-1350, p. 10, 844 So.2d at 1065-1066. Thus, in the absence of any in-court identification of the defendant as the perpetrator of the charged offenses, this Court held that the missing evidence was “critical” to the conviction. Id., 2002-1350, pp. 12-13, 844 So.2d at 1067.
The defendant has shown no prejudice resulting from the missing recording. The shotgun was found in plain view in the bedroom of the defendant’s residence, and the jury heard the testimony of Marshall Credo that the defendant admitted ownership of the weapon at the time of his arrest, as well as Marshall Credo’s in-court identification of the defendant as the man who admitted owning the shotgun. Finally, Sergeant Crawford testified that when he was unable to unload the shotgun, the defendant explained the procedure to him.
This assignment of error is without merit.
| ^Conclusion
The defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Trial is pending on counts 1 and 2.

. When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court is to first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). Accordingly, we address the defendant’s sufficiency argument first.

. Although the record indicates that the State introduced into evidence SE-6 (the copy of the call detail sheet) and SE-7 (the recording of the jailhouse calls), the record before this court does not contain the tape recordings of the calls made by the defendant. Upon this court’s request for the audio recording of the jailhouse calls, among other exhibits, on May 4, 2015, the Criminal District Court's Clerk’s Office informed the court by letter dated June 18, 2015:
"This letter is in response to your request for evidence in case number 2015-KA-0354 ... The Clerk of Criminal District Court is not able to locate exhibits SE-6 (call detail sheet) and SE-7 (audio jail calls). The items were not listed as evidence received from NOPD; therefore, the items were nev *678 er taken in by staff of the Clerk of Criminal District Court.”
Thus, the only evidence of the contents of the jailhouse call(s) is contained in Ms. White’s trial testimony, which suggests that the defendant provided information to Ms. White pertinent to completing an affidavit attesting to her ownership of the weapon.

. Ms, White did not specify what information she attempted to give the District Attorney's Office,